(82 N. W. Rep. 737.)

---

ALICE E. MAHNKEN *vs.* CHARLES E. MAHNKEN.

Opinion filed May 2, 1900.

**Divorce—Mental Suffering.**

Under section 2739, Rev. Codes, a decree of divorce may be granted in this state by reason of the infliction of grievous mental suffering, although such suffering produce no bodily injury.

**Question of Fact.**

But whether or not, in any given case, grievous mental suffering has been inflicted upon the complaining party, is purely a question

of fact to be determined from all the circumstances of the case, including the mental characteristics of the party complaining, so far as the same may be developed in the case.

### Evidence Does Not Show Grievous Mental Suffering.

Upon full consideration of the evidence in this case, it is *held* that the testimony fails to establish the infliction of grievous bodily injury or grievous mental suffering.

Appeal from District Court, Cass County; *Lauder,* J.

Action by Alice E. Mahnken against Charles E. Mahnken. Judgment for defendant, and plaintiff appeals.

Affirmed.

*David R. Pierce* and *George H. Phelps,* for appellant.

The test of extreme cruelty under our statute where there is no personal physical violence is conduct which inflicts upon the innocent party grievous mental suffering. § 2739 Rev. Codes. Grievous mental suffering is sufficient ground for divorce as extreme cruelty although it does not impair the health. *Barnes* v. *Barnes,* 95 Cal. 171, 30 Pac. Rep. 298; *Fleming* v. *Fleming,* 95 Cal. 439, 30 Pac. Rep. 566; *Smith* v. *Smith,* 119 Cal. 183, 48 Pac. Rep. 730. Any unjustifiable conduct upon the part of either the husband or the wife which so grievously wounds the mental feelings of the other or so utterly destroys the peace of mind of the other as to utterly destroy the legitimate ends and objects of matrimony constitutes extreme cruelty, although no physical violence may be inflicted or even threatened. *Carpenter* v. *Carpenter,* 2 Pac. Rep. 122; *Gibbs* v. *Gibbs,* 18 Kan. 419; *Bennet* v. *Bennet,* 24 Mich. 151; *Whetmore* v. *Whitmore,* 49 Mich. 417; *Caruthers* v. *Caruthers,* 13 Ia. 266; *Wheeler* v. *Wheeler,* 53 Ia. 511; *Smith* v. *Smith,* 6 Ore. 100; *Kennedy* v. *Kennedy,* 73 N. Y. 369; *Latham* v. *Latham,* 30 Grat. (Va.) 307; *Cook* v. *Cook,* 3 Stock. 195; *Beyer* v. *Beyer,* 50 Wis. 254; *May* v. *May,* 62 Pa. St. 206; *Beebe* v. *Beebe,* 10 Ia. 133. Though habits of intoxication do not form sufficient grounds for divorce in favor of the wife, they are material to be considered in connection with other objectionable acts on his part as tending to show greater liability of a recurrence of ill treatment than if he were sober. *Rodman* v. *Rodman,* 20 Grant. Ch. (N. C.) 428; *Coursey* v. *Coursey,* 60 Ill. 186; *Harman* v. *Harman,* 16 Ill. 85. Habits of profanity may be considered in connection with habits of intoxication as giving color to his conduct. *Powers* v. *Powers,* 20 Neb. 529. A course of systematic ill treatment, consisting in continual scolding, and fault finding, using unkind language, studied contempt, and many other petty acts of a malicious nature, when sufficiently long continued and when producing sufficiently serious results, constitute cruel and inhuman treatment and are sufficient grounds for granting a decree. *Marks* v. *Marks,* 57 N. W. Rep. 651.

*John E. Greene* and *R. M. Pollock,* for respondent, filed a printed argument without citation of cases.

BARTHOLOMEW, C. J. · Plaintiff brought an action for divorce against the defendant on the statutory ground of extreme cruelty. The complaint shows that these parties were married on June 28, 1889; that three children have been born of said marriage, the youngest being now three years old. It is alleged that for three years last past the defendant has treated the plaintiff with such extreme cruelty as to cause her to suffer extreme anguish of mind and grievous mental and physical suffering. The complaint specifies specially cruel treament on May 1, 1897, and on May 1, 1898, and on November 1, 1898. There is also a general specification that whenever store bills were presented to defendant for payment he would treat plaintiff with extreme cruelty; and also that the defendant was addicted to the use of intoxicating liquor, and when under the influence thereof he became specially abusive. This abuse was all in the form of language. No physical ill treatment is claimed. The defendant answered, in denial, and also by way of cross bill alleging extreme cruelty on the part of plaintiff. His specifications need not be noticed. After a prolonged trial, and the examination of a large number of witnesses, the trial court found that the allegations of extreme cruelty were not proven upon either side, and the court dismissed both the complaint and the cross bill. The plaintiff appeals, and asks a retrial of the case.

We have carefully studied the testimony from first to last, and in the light of the comments made thereon by counsel, and we are unable to reach a conclusion differing from that of the trial court. As defendant has not appealed, he can ask nothing affirmative at the hands of this court. His allegations of cruelty are material only so far as they may tend to establish recrimination. But the proofs so far failed to establish that cruelty demanded by the statute as constituting any ground for divorce that we dismiss defendant's charges without further notice. Plaintiff's proofs cannot, however, be thus summarily dismissed. Preliminary to any discussion of it, we may state generally that the record shows that when these parties were married defendant had ready means in the sum of about $10,000. His annual income since that time has been about $2,500. Plaintiff at the time of the marriage owned some unimproved city property in Fargo. One tract of it adjoined her father's home. Upon this tract defendant, with his own means, erected a dwelling house at a cost of about $5,000. The parties resided in this house from 1892 until their separation in October, 1899. The house was at least comfortably furnished. The annual expense of maintaining the home and family was about $2,000. It was a home of comfort and some luxury, and we think from the evidence we are justified in saying that in the main it was the home of average happiness. But this was not always true. There were differences in the characteristics of the husband and wife, which, while not more marked than are often found, were yet of a nature to produce friction. The defendant is frugal in his habits and by nature. His

counsel on one occasion applies to him the term "close-fisted," and it may not be inappropriate. He was, at least, careful of his earnings and thoughtful for the future. The plaintiff's evidence shows her to care more for the present. She is evidently more liberal in her views of appropriate expenditures; not that the evidence establishes extravagance on her part, but she was not in sympathy with the conservative views of her husband. All their real differences seem to revolve around this one point of expenditures. As head of the family, the right must be conceded to the husband to control the family expenses. We, however, regard it as proven that the defendant, when irritated by bills presented, or by the requests of his wife for money, used towards her on several occasions language that cannot be justified under any circumstances. Yet, conceding this, we are well satisfied that this conduct did not constitute extreme cruelty as defined by our statute. Section 2739, Rev. Codes, declares: "Extreme cruelty is the infliction by one party to the marriage of grievous bodily injury or grievous mental suffering upon the other." It is claimed, and there is evidence in the record tending to show, that the language used by defendant towards his wife caused a nervous sickness on three several occasions, so serious that the visits of the family physician were necessary. We cannot, however, regard this as proven. The family physician, who is also the family physician in plaintiff's father's family, testifies that he has no recollection of ever treating plaintiff for any nervous disorders, or ever treating her except at confinement, and that her general health is good. It is quite clear, we think, that the use of the offensive language did not inflict grievous bodily injury upon plaintiff. But under the later and better construction of statutes similar to ours it is held that the grievous mental suffering may be sufficient to warrant a divorce under the statute, and yet may be productive of no perceptible bodily injury. *Barnes* v. *Barnes,* 95 Cal. 171, 30 Pac. Rep. 298, 16 L. R. A. 660; *Smith* v. *Smith,* 119 Cal. 183, 48 Pac. Rep. 730, 51 Pac. Rep. 183; *Carpenter* v. *Carpenter,* 30 Kan. 744, 2 Pac. 122. But whether or not this grievous mental suffering has been inflicted in any particular case is purely a question of fact to be determined from a consideration of all the circumstances of the case, including the mental characteristics of the party complaining so far as they may be developed. *Fleming* v. *Fleming,* 95 Cal. 430, 30 Pac. Rep. 566. But it is very evident that courts here tread upon delicate, and perhaps uncertain, grounds. The differences in mental characteristics are as varied as the difference in facial expression. The effect upon two minds of the same act or language may be entirely different, and the effect upon one may be incomprehensible to the other. It is clear, then, that no standard can be erected, no measurements given, and no criterion established by which to gauge mental suffering. This is a point upon which this court would be inclined to give much weight to the views of the trial court. The complainant was before that court, and was examined at great length. All her mental characteristics would be much more

apparent there than they can be from a study of the record. Yet the record discloses that plaintiff is a very intelligent woman, with a strong, and perhaps self-asserting, nature, and ambitious, socially and otherwise. We certainly cannot read that she is supersensitive. Plaintiff testifies that in May and June, 1897, immediately following the unpleasantness of May 1, 1897, upon which great stress is laid, "I was chairman of the women's committee which was arranging for the Shrine parade, and I was on several other committees, and my duties as chairman of the general committee and a number of other committees occupied a good deal of my time." This testimony was given to rebut certain testimony introduced by defendant in support of his cross bill to the effect that plaintiff spent an undue amount of time on the streets, and away from her home and children. While it answered that purpose, it also showed conclusively that a woman who could enter thus heartily into public affairs, and become absorbed in public duties that occupied so great a portion of her time, was not at the same time enduring grievous mental suffering by reason of the cruelty of her husband. Again, in 1898, and following close upon one of those episodes which it is alleged produced not only mental suffering, but bodily injury, we find plaintiff in St. Paul, on means furnished by her husband, and writing him letters which might stand as models for happy, light-hearted, and affectionate wives to send to absent husbands. We find no evidence in this case of the infliction of that grievous mental suffering that the law requires to justify the granting of a divorce. No doubt the language used by defendant would produce anger in a proud-spirited woman. But it is not for that cause that the marriage contract can be annulled. That contract, while it imposes upon the parties thereto the imperative obligation never to unnecessarily anger or wound each other, yet it also imposes the duty of forgiveness of all those weaknesses, imperfections, and peculiarities to which humanity is ever prone. The sacred observance of that contract is demanded by many public interests. It is demanded by the interests of the immediate parties thereto, and more than all it is demanded for the proper nurture, protection, and training of the offspring that results from the marriage contract. The statutory grounds for divorce in this state are broad, and courts may not multiply divorces by granting them in cases not clearly within the statute. The judgment of the District court is made the judgment of this court, and is in all things affirmed. All concur.