[File No. 7044]

GLENNA P. SWANSON, Respondent, v. ARNOLD D. F. SWANSON, Appellant.

(28 NW2d 73)

Opinion filed June 13, 1947

*Lyche & Lyche,* for appellant.
*Carlton G. Nelson* and *Chester W. Graves,* for respondent.

BURKE, J. The plaintiff, Glenna P. Swanson, brought this action for divorce upon the ground of extreme cruelty. The defendant, Arnold Swanson, filed an answer and cross complaint, denying plaintiff's allegations of cruelty, alleging extreme cruelty upon the part of the plaintiff and also demanding a divorce. The trial court dismissed both the complaint and the cross complaint, holding that the evidence would not support a judgment of divorce for either party. The defendant has appealed and demanded a trial de novo in this court.

Plaintiff and defendant were married at Grand Forks on July 2, 1942. At the time of their marriage plaintiff was nineteen years of age and defendant was seventeen. From the very outset of their married life they have lived an unsettled and harried existence. First, they lived with defendant's grandmother for a week, then in an apartment of their own for three weeks, then with plaintiff's mother for three weeks and then in a one-room apartment of their own for about two months. At the time defendant was married he was employed by the Grand

Forks Tailoring Co. He left this employment and went to work for the Northern States Power Company. In the fall of 1942, when the project on which he was working was closed down, he and the plaintiff moved to his mother's farm near Gilby. He picked potatoes until it became too cold to work in the fields and thereafter worked in a warehouse grading potatoes. In the spring plaintiff and defendant moved back to Grand Forks. They lived with plaintiff's mother until defendant found employment at the State Mill. Thereafter they lived in an apartment of their own until the spring of 1944. During the summer of 1943 defendant left the mill and went to work for the Great Northern Railroad as a switchman. When winter came and work with the railroad became slack he was employed by the Northern Construction Company. According to defendant it was at this time that the difficulties first arose between him and the plaintiff.

His testimony is, "When I was working there, we started having trouble and arguments. She went around with a lady named Libby Nelson. She never made my lunch; would never make my breakfast, and I never knew when I would get supper. Finally I said I would leave her. It finally got so I couldn't take it any more and I did leave her."

After leaving the plaintiff, defendant changed employment again and went to work at the State Mill. While there he became ill. He went back to his mother's farm where he was in bed for a month. He came back to Grand Forks, and lived at his grandmother's. He went back to work at the State Mill but the work was too heavy. He left the mill and worked for the White Seal Sales Co. until October first. Then he went to St. Paul and worked with a concrete crew until the second week in December.

During all the time after defendant left the plaintiff, she had been living at her mother's. Defendant apparently did not contribute to her support during this time although she did "claim" his last check at the State Mill. When defendant returned to Grand Forks in December 1944, he and plaintiff were recon-

ciled. They took up their residence with plaintiff's mother and defendant was employed by the Grand Forks Tailoring Co.

At some indefinite time in 1945, plaintiff and defendant went to St. Paul where they lived with defendant's father. While in St. Paul, defendant worked, for Dupton's, National Canning Co., Rothschild's and the Golden Rule.

It was while defendant was working for National Canning Co. that difficulties again arose between him and the plaintiff. He stated, "They gave me a job as crew leader. I worked from four to twelve every night, and if a relief man didn't show up I had to stay until somebody did come. I had to stay. She said I was running around. She would believe everybody but me."

In January 1946, plaintiff and defendant returned to North Dakota. They went to Gilby and lived at the farm of defendant's mother until March, when they returned to Grand Forks. He found employment with Grossman's. Later he secured part-time work at the Grand Forks Tailoring Co. At first his hours were from 4:00 A. M. until 1:00 P. M. Later he worked from 6:00 A. M. until 7:00 P. M.

After their return to Grand Forks the relations between the defendant and plaintiff continued to disintegrate. According to defendant's testimony there was constant disagreement and argument between them. Most of the contention concerned the division of his pay checks. He testified, "She told me she wanted some money to go out. I told her if she wanted some money she could get $10.00, but she wanted the whole check. That was what the argument was about. When I went upstairs to get cleaned up she called the police on me. When I came downstairs there was a policeman there. I finally agreed to go down there with him. I explained the matter to them and they released me right away." Q. "And that was the only time she had you arrested?" A. "She used to bring me down there once in a while." Defendant also stated that he found it impossible to please the plaintiff, and that every time he went out with her she started an argument and that he finally refused to go out with her. It also appeared that plaintiff at times called defendant's employer upon the phone and demanded his pay

check, and that at other times she called at the employer's place of business and made the demand in person. Finally, upon October 10, 1946, defendant left the plaintiff. Upon October 12, she started this action for divorce.

The main question in the case is whether the evidence is sufficient to establish that plaintiff had been guilty of extreme cruelty toward the defendant. Extreme cruelty is the infliction of grievous bodily injury or grievous mental suffering. Rev Code 1943, § 14-0505. Here there is no claim of bodily injury. Defendant's contention is that the behavior of the plaintiff, in her failure to accept her responsibility as a housewife, in accusing him of running around with other women, in her arguments over money and demanding his pay check from his employer and in having him called to the police station, has inflicted grievous mental suffering upon him.

Whether the acts of the plaintiff have inflicted grievous mental suffering upon the defendant is a question of fact to be determined from all of the circumstances of the case. Mahnken v. Mahnken, 9 ND 188, 82 NW 870; Rindlaub v. Rindlaub, 19 ND 352, 125 NW 479. In this case there is merely evidence of acts which it is now said caused grievous mental suffering. There is no direct evidence that the acts did cause such suffering. Facts, of course, may justify inferences and certainly it is a legitimate inference in this case that plaintiff's acts did cause the defendant annoyance and humiliation, but whether they caused grievous mental suffering is another question. Grievous means "severe or intense." Webster's International Dictionary. In this connection we think it is pertinent to point out that our statutes draw a distinction between extreme cruelty and cruelty. Extreme cruelty is made an immediate ground for divorce while cruelty is made an element of constructive desertion. Where the parties to a marriage separate because of the cruelty of one or the other, the separation must continue a year before the acts ripen into grounds for divorce. Rev Code 1943, §§ 14-0506, 14-0509.

The trial court found that the evidence did not establish that the acts of the plaintiff inflicted grievous mental suffering upon

the defendant. His findings are entitled to appreciable weight. As was said by Chief Justice Bartholomew in Mahnken v. Mahnken, supra, 9 ND at page 191, 82 NW 872, "Courts here tread upon delicate and perhaps uncertain grounds. The differences in mental characteristics are as varied as the difference in facial expression. The effect upon two minds of the same act or language may be entirely different, and the effect upon one may be incomprehensible to the other. It is clear, then, that no standard can be erected, no measurements given, and no criterion established by which to gauge mental suffering. This is a point upon which this court would be inclined to give much weight to the views of the trial court. The complainant was before that court, and was examined at great length. All her mental characteristics would be much more apparent there than they can be from a study of the record."

The language of Judge Bartholomew is especially appropriate to this case where there is no direct evidence of mental suffering and our judgment must be founded solely upon the inferences which the circumstances will justify. Except for what is revealed in the dim light shed by his testimony, we do not know what manner of man the defendant is. We know only that he is a very young man who has knocked about and been knocked about by the hazards of everyday life. Certainly there is nothing in the record which would justify a reversal of the trial court's decision upon this issue.

Defendant has also challenged that part of the judgment which assesses the costs and plaintiff's attorney's fees against him.

Section 14–0523 provides:

"When an action for divorce is pending, the court in its discretion may require either party to pay . . . any money necessary . . . to prosecute or defend the action."

Defendant does not say that this statute does not permit the assessment of costs and attorney's fees against him if the court had jurisdiction of the suit. His claim is based upon the fact that at the close of the trial, the trial court expressed doubt as to

the residence of the parties and thus doubt as to the jurisdiction of the court. Defendant urges that if there was no jurisdiction of the case, there was no jurisdiction to award costs and attorney's fees. Evidently the trial court's doubts as to jurisdiction were dissipated before the findings and conclusions were made, for they disclose that the case was decided on the merits. From our examination of the evidence, we think it clear that residential requirements were clearly established.

This is a trial de novo, however, and the propriety of the allowance for costs and attorney's fees is before us for review. Hoellinger v. Hoellinger, 38 ND 636, 166 NW 519. At the time the allowance was made all the evidence was before the court and the question is whether in the circumstances there was an abuse of discretion.

Plaintiff's testimony may be briefly summarized. She stated that in September 1946, defendant stayed out late at night, that he would leave home at quarter to four in the afternoon and return at quarter to four in the morning and refuse to make any explanation of his conduct. She told that her relatives informed her that he was running around with other women. She complained that she had not been provided with comfortable living quarters. She also stated that on the occasions when defendant left her, he did not provide for her support. One witness testified that on one occasion he had seen the defendant in a car with a Mrs. Feist and another testified that the defendant had once asked her for a date and that she turned him down.

During the time that the defendant was said to be staying out from four in the afternoon until four in the morning, his working hours were from six in the morning until seven in the evening. The testimony as to his working hours is not contradicted. There is no evidence that he was ever absent from work and one of his employers was a witness in the case. As to the charge that he was out on an occasion with a Mrs. Feist, it appeared that both the defendant and Mrs. Feist, who is his sister-in-law, were present at a party given by another relative and that he gave her a ride home. He denied that he ever asked the other witness

for a date. Defendant stated that on the first occasion he left the plaintiff he did not contribute to her support. The record shows, however, that there are no children, that plaintiff is 23 years old, strong and in good health and that most of the time she has been employed. On the last occasion when defendant left the plaintiff the rent was paid and she had a credit book at the grocery. Two days after he left her she commenced this action. In this connection it should be remembered too, that plaintiff did not deny any of the acts to which the defendant testified.

We think the evidence shows that whatever fault there is in this case lies with the plaintiff. And while we sustain the trial court's finding that it is not sufficiently grievous· to justify a divorce, nevertheless we are of the opinion that, in view of plaintiff's patently groundless complaint, the age of the parties, their health, their employment and the absence of children, it was error to assess costs and attorney's fees against the defendant.

The judgment will be modified accordingly and as modified affirmed without costs upon this appeal.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and MORRIS, JJ., concur.