[No. 31927.   Department Two.   May 8, 1952.]

ALICE DETJEN, *Respondent*, v. HARRY DETJEN, *Appellant.*[1]

*Medley & Haugland* and *Richard K. Pelz*, for appellant.
*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *F. V. Betts*, for respondent.

FINLEY, J.—This is an action for divorce, charging cruel treatment and personal indignities, rendering life burdensome. The trial court made the following findings:

"That the defendant, during the course of the marriage of these parties, in the presence of guests in their home, was critical of the plaintiff, her cooking and her wearing apparel, which criticism amounted to mental cruelty toward the plaintiff; that the defendant was guilty of assuming an attitude of overbearance and dominance of the home to such a degree that friends would no longer visit at their home; that during a considerable period of time during the marriage of the parties, the plaintiff was in poor health, during which time the defendant was overly critical toward her

[1]Reported in 244 P. (2d) 238.

when he knew that she was in such a condition that she was sensitive to unkind remarks; that it is impossible for the parties to longer live together as husband and wife."

On the basis of the foregoing and other findings, a divorce was granted the plaintiff wife. She was awarded care and custody of the two minor children; the property of the parties was divided, and provision was made for the support of the children and for attorney's fees. Defendant husband has appealed.

There are several assignments of error, but the crux of the matter lies in the third assignment of error, which reads as follows:

"The trial court erred in entering its Findings of Fact No. VI, to the effect that appellant was critical of plaintiff, her cooking and her wearing apparel, which amounted to mental cruelty; that he was, guilty of assuming an attitude of overbearance and domination; that he was overly critical towards plaintiff in her sensitive condition, and that it is impossible for the parties to longer live together as husband and wife."

It is a well established policy in our state that divorces will not be granted unless sound reasons exist therefor over and above thinly veiled notions of unhappiness and incompatibility.

We do recognize cruelty and personal indignities, rendering life burdensome, as reasonable grounds, among others, for divorce. Legislation has been enacted to this effect. We have recognized emotional or personality differences in individuals, and have approached the problem of divorce in terms of subjective rather than objective standards. *Thompson v. Thompson*, 16 Wn. (2d) 78, 132 P. (2d) 734; *Baselt v. Baselt*, 37 Wn. (2d) 461, 224 P. (2d) 631. In other words, in applying or interpreting the statutory ground for divorce, implicit in the words "cruelty and personal indignities," we have recognized that common sense requires a subjective approach to the problems of divorce, and, for example, in *Thompson v. Thompson, supra* (p. 80), we said:

"Language can, and frequently does, constitute cruel treatment and render life burdensome. The test, however, is subjective rather than objective. It is not the words used, but the effect of them upon the aggrieved party that is determinative."

The divorce act of 1949 (Laws of 1949, chapter 215, § 11, p. 701, Rem. Supp. 1949, § 997-11) reads, in part, as follows:

"In all cases where the court shall grant a divorce . . . it shall be for cause distinctly stated in the complaint, proved, and found by the Court . . ."

In the case here on appeal, plaintiff's complaint, in terms of the statutory language respecting grounds for divorce, alleges, generally, cruelty and personal indignities on the part of the defendant husband. A bill of particulars filed by the plaintiff charges more specifically that "the plaintiff's health has been seriously affected" by the alleged acts of the defendant husband. The record in this case indicates that the wife was an extremely sensitive, highly emotional individual; that this fact was known and recognized by the husband. The record indicates a course of conduct by the husband over a period of years, characterized in effect by the trial judge in his memorandum opinion, as irritating, inconsiderate and domineering as to the wife, and resulting in a strained, highly emotional, nervous, home atmosphere, affecting the children and the wife adversely and seriously. Considered individually, the acts of the husband in teasing his wife, criticizing her cooking, her personality, and her personal appearance, would seem fairly innocuous. But the wife's personality, the fact that she was ill much of the time and very sensitive, and the fact that the conduct of the husband was continuous over a long period and, in fact, amounted to a definite, continued course of conduct, add up to a more serious indictment of the husband.

Mrs. Dorgan, a witness for the plaintiff, testified that she had visited in the Detjen home, and "When we went in, the atmosphere of the home was strained, very strained." She further testified that the husband was quite pleasant when the conversation involved him, but when it was switched to the wife, "And he was obliged to speak to her,

his tone was very surly and I would say almost insulting." Mrs. Sneed, testifying for the plaintiff, stated, "We have always felt a strained atmosphere, and we have been uncomfortable at the table. I have put off going as much as I might have for that reason, because I didn't like that strained, unhappy atmosphere at the table." This witness further testified that the defendant, on one occasion, advised her that he planned to take the small son of the parties to St. Louis without telling his wife about it, or where he had gone. Mrs. Callahan, plaintiff's sister, testified as follows:

"Q And did you visit out at the house during that period of time? A Yes, I was out there. Q Did your sister ever get hysterical in your presence? A No, she did not. Q She never did. And did she appear nervous? A Yes. I think she had cause to be nervous. Q Did you ever see Mr. Detjen strike her? A Not physically, but verbally. Q Verbally he struck her. When was this? A Well, most all the time. I mean I consider it striking verbally when you belittle people. Q Well, did she belittle him, then? A She would clam up. Q She would clam up? A You don't talk, — Q She wouldn't talk? A — not after his bursts. Q Not after what? A Well, he bellowed. He didn't talk in a natural tone of voice. Q You mean he shouted? A Yes. Q He would shout out loud? A Yes. I got so uncomfortable I just didn't want to go out there."

Mrs. Callahan further testified as follows:

". . . And I also brought up that he had visited in our home and he knew that our place was always full of people, everyone felt comfortable, and Alice was a very popular girl and she liked to go places, and his answer to that was, 'She didn't deserve them; she hadn't earned them.'"

In *Neff v. Neff*, 30 Wn. (2d) 593, 594, 192 P. (2d) 344, we stated quite positively that "neither incompatibility, uncongeniality, dissatisfaction, nor unhappiness, constitute a ground for a divorce." However, as mentioned heretofore, we indicated in *Thompson v. Thompson, supra* (p. 80), that

"Language can, and frequently does, constitute cruel treatment and render life burdensome."

In other words, that language and harmful effects therefrom can be a basis or ground for a divorce under our statute.

In the case at bar, the trial court, in conformity with provisions of Rem. Supp. 1949, § 997-11, mentioned hereinbefore, made a finding that the husband had been guilty of cruelty. Under Rule 43 (as amended), Washington Court Rules on Appeal, 34A Wn. (2d) 47, findings are required in equity cases. The scope of review is the same as in law cases. *Brown v. VanTuyl, ante* p. 364, 242 P. (2d) 1021. In *Barrington v. Murray*, 35 Wn. (2d) 744, 752, 215 P. (2d) 433, we said:

"The evidence considered in its entirety does not preponderate over the findings made by the trial court. Therefore, we must accept the findings as verities."

And in *Tardif v. Hellerstedt*, 37 Wn. (2d) 940, 942, 226 P. (2d) 908, we said:

"We must apply the familiar rule that, when a cause is tried to the court without a jury, the findings of fact made by the trial judge will not be disturbed unless the evidence clearly preponderates against them."

In reviewing the statement of facts in the instant case, we must recognize that it is a cold, written record of the proceedings in the trial court. But the trial judge had the witnesses before him. He heard them testify, he noted their reactions, their mannerisms, the vocal inflections—all of which often are more indicative of meaning and the true state of things than the bare written words recounting questions asked, and answers given by litigants and witnesses. On the basis of the record alone, the question might be a close one as to whether the findings of the trial court are clearly supported by the evidence. However, the burden is upon the complainant. In the case at bar, the weight or the presumption of validity which we accord findings of the trial court tips the balance favorably in the direction of the wife. The findings of the trial court will not be disturbed, and the judgment in this case is in all respects affirmed.

SCHWELLENBACH, C. J., HILL, HAMLEY, and OLSON, JJ., concur.