Clara DAHL, Plaintiff and Respondent,

v.

Hans DAHL, Defendant and Appellant.

No. 7817.

Supreme Court of North Dakota.

July 20, 1959.

Duffy & Haugland, Devils Lake, and Heringer, Nelson & McClintock, Rugby, for defendant and appellant.

Waldron & Kenner, Minot, for plaintiff and respondent.

CLIFFORD SCHNELLER, District Judge.

The above action is one for divorce, The grounds for divorce as stated in plaintiff's complaint was extreme cruelty.

The defendant by his amended answer admits acts on his part which caused mental cruelty to the plaintiff, and the plaintiff was permitted to prove her grounds for divorce as by default. The matter of the property accumulated by the parties during their marriage and its equitable division was litigated and is here for trial de novo upon the defendant's appeal.

The facts and circumstances involved herein are substantially as follows: Plaintiff was fifty-six years of age and defendant fifty-three years of age at the time of the trial. Both parties have physical disabilities, plaintiff having an operation for a slipped disk in her vertebrae, and defendant having back trouble. The parties were married July 3, 1928, and have two children as an issue of their marriage. Both children have reached their majority, are married and have families and homes of their own. Neither of the parties brought much of wordly goods into their marriage. Defendant was a barber and after his marriage he continued to work at his trade until the year 1938. At that time he decided to farm and rented a farm in Pierce County, and the parties continued to farm as tenants until 1944, when it was determined that a half section farm could be purchased for $10,000. At the time the parties had approximately $2,000 in cash and the defendant made arrangements with a bank to borrow the additional $8,000 needed to complete the purchase. When plaintiff's father heard of the proposed purchase he offered to loan the parties $8,000 at 2 per cent interest secured by a first mortgage on the land being purchased. This offer was accepted, title was taken in the defendant's name, and a mortgage for $8,000 was given by the parties to plaintiff's father. At about the same time an option was taken by defendant on the other half-section of land in the same section as the half-section purchased. The option was exercised, the defendant took title in his name, and the parties then had a square section of land, described as Section 26, Township 156, Range 73, Pierce County, North Dakota, as a farming unit. The farm home and the other buildings were located in the South Half of said Section. As the land purchased was subject to a tenant's lease, the parties could not gain possession until 1945. Being unable to gain possession in the year of purchase, the parties moved into the farm home of plaintiff's father and assisted with his extensive farming operations.

Defendant testified that he made an agreement with his father-in-law that with the assistance of a brother of his wife the two of them would work on the farm during 1945 and were to receive as their compensation one third of the crops or one sixth to each; that some 20,000 bushels of wheat was raised in that year, which was worth about $1 a bushel, and that on those figures defendant should receive about $3,300 but actually was paid only $240. Plaintiff testified that she knew of no such agreement, and her father, while testifying in the action, was never asked concerning such agreement.

The year following, the parties operated their own farm and continued to do so successfully until the divorce proceedings

were commenced on June 5, 1958. There was paid to plaintiff's father on the $8,000 note and mortgage the sum of $4,000, and the father later, without additional consideration, returned to the parties the mortgage indebtedness and satisfied the mortgage.

During the years from 1945 to 1958 the parties individually and together accumulated other property as follows:

The plaintiff received by gift or inheritance from her father a quarter section of land valued at $8,000.

The defendant received by inheritance a one-fourth interest in 400 acres of land, and purchased an additional one-fourth interest in this land from joint income for $1,200.

The trial court found that the 400 acres was of the net value of $9,000, and that the one-fourth joint interest of the parties in this land was of the value of $2,250.

Section 26 was valued by the trial court at $32,000, with the South half having a value of $18,500 and the North half a value of $13,500.

In addition to this real estate, the parties accumulated during their married life additional property described and valued as follows:

| | |
|---|---|
| Mineral acres | $25.00 |
| Farmers Union Elevator stock and credits | 730 |
| Farm Machinery | 3,500 |
| 1948 pickup truck | 450 |
| 1953 Chevrolet automobile | 600 |
| 1956 Ford station wagon | 800 |
| Uranium shares | 20 |
| Government bonds | 700 |
| Grain on hand | 2,363 |
| Lot 18, Block 10, City of Rugby | 4,500 |
| Household furniture and equipment, on which no value is placed. | |

The total of all property is valued at $57,888 plus the value of the household furniture and equipment.

The trial court then awarded to plaintiff the following property:

The South half of Section 26–157–74

The Southeast quarter of Section 3–158–73

Lot 18 of Block 10, City of Rugby;

1953 Chevrolet;

United States Government bonds;

Cash to be paid to plaintiff by defendant of $1500;

And the household furniture and equipment;

And awarded to the defendant:

The North half of Section 26–157–74

The one-half interest in the 400-acre farm, one fourth of which was inherited by defendant, and one-fourth interest purchased;

The mineral acres;

The elevator stock and credits;

Farm machinery;

The pickup truck;

The station wagon;

The uranium shares;

The grain on hand; and

$200 of Government bonds;

The trial court considered the $4,000 balance unpaid upon the note and mortgage given to plaintiff's father as her separate and individual property, and also considered the southeast quarter of Section 3–158–73 as plaintiff's individual and separate property, which it deducted from the gross value of the property awarded to plaintiff, thus awarding her joint property of the net value of $21,300.

With what the trial court considered the individual property of the plaintiff, it awarded her $33,300 together with the household furniture and equipment.

The property awarded to the defendant, according to the trial court's figures, amounted to $23,838, plus $2,250 value of property individually inherited, less cash to be paid plaintiff of $1,500, making the award to defendant of the net value of $24,588.

The defendant complained vigorously of this division, contending the division to be inequitable for these reasons: That the cancellation of the $4,000 debt and mortgage by plaintiff's father was gift to both of the parties and should be considered as joint property rather than the individual property of the plaintiff; that defendant is a farmer with a line of farm machinery sufficient to farm a section of land and that he intends to continue farming; that the half-section of land he is awarded is without buildings of any kind, leaving him without shelter for his machinery and with no place to store his grain; that the plaintiff cannot and will not farm and necessarily will rent out the farm land awarded her, and the buildings would only be a liability.

The plaintiff contends that the division of property is equitable, that she desires to live on the home farm and have it for her permanent abode, and that the conduct of defendant toward the plaintiff was such that the trial court had a right to consider it in making a division of the property.

Section 14–0524, NDRC 1943 provides:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper * * * and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

The distribution to be made depends upon the facts and circumstances in each particular case. Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697.

"There is no rigid rule for the division of property but the ultimate object to be sought is an equitable distribution." Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107, 111.

"In determining the question of alimony or division of property as between the parties, the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether accumulated or acquired before or after the marriage; and from all such elements the court should determine the rights of the parties and all other matters pertaining to the case." Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107, 111.

Section 14–0525, NDRC 1943 provides:

" * * * The court, in rendering the decree of divorce, may assign the homestead or such part thereof as to the court may seem just, to the innocent party, either absolutely or for a limited period, according to the facts in the case and in consonance with the law relating to homesteads. The disposition of the homestead by the court, and all orders and decrees touching the alimony and maintenance of either party to a marriage and for the custody, education, and support of the children are subject to revision on appeal in all particulars, including those which are stated to be in the discretion of the court."

The trial court awarded the parties what it considered their individual property, and attempted to make an equal and equitable division of the property jointly acquired, and further exercised its discretion under Section 14–0525, supra, and in awarding the homestead property to the innocent party. Upon a trial de novo this court must ascertain the facts from

the record before it, but in making its determination the findings of the trial court are entitled to appreciable weight. Buchanan v. Buchanan, 69 N.D. 208, 285 N.W. 75; Agrest v. Agrest, supra.

■ With the exception of the finding of the trial court that the plaintiff should have credited to her as her separate and individual property the sum of $4,000, represented by the cancellation of the unpaid portion of the real-estate mortgage, we agree that an equitable distribution of the property was made. The testimony most favorable to the plaintiff on the subject of the cancellation of the unpaid portion of the real-estate mortgage is as follows: Plaintiff's testimony on direct examination reads:

"Q. Then of the $8,000.00 that was loaned to you by your father for this purchase of this farm, was part of that forgiven, was part of that not paid to your father, of the $8,000.00? A. My father cancelled $4,000.00, *said rather help us now than to leave will.* (Italics ours.)

"Q. Then did he later cancel for $3,000.00 more so that only $4,000.00 paid on the obligation? A. I did not understand question—he cancelled $4,-000.00.

"Q. That's what I meant—he cancelled $4,000.00 out? A. On the $8,000.00.

"Q. And gave back the mortgage paper and gave satisfaction of the mortgage? A. Yes."

The testimony of Rudolph Thingvold, father of the plaintiff on direct examination, reads:

"Q. And then later on did you cancel out half of this mortgage amount?

A. Yah, we made out mortgage they could pay $1,000.00 a year or more, and first year they farmed they paid me back $3,000.00, and next year paid me back $1,000.00, so then I cancelled the $4,000.00.

"Q. I see. And did you do that so that your daughter and your son-in-law could have a home? A. Yah, I did.

"Q. Cross examine. A. And I expected that deed to be Hans and Clara's—

"Q. That was my understanding."

This testimony can lead to but one conclusion and that is that both plaintiff and her father believed the cancellation of the unpaid portion of the real-estate mortgage was gift to both the parties. Plaintiff's father thought title to the land was in the name of both the plaintiff and defendant and he consequently intended his cancellation to be a gift to both the parties and not to the defendant alone, who held the legal title.

The judgment will be modified by awarding equally to the parties the $4,000 mortgage gift, which necessitates the revising of the trial court's figures by striking from the award to plaintiff the item of $1,500 cash to be paid by defendant, and granting to defendant an interest to the extent of $500 in Lot 18, Block 10, City of Rugby. As modified, the judgment will be affirmed, without costs on this appeal.

SATHRE, C. J., and BURKE and MORRIS, JJ., concur.

TEIGEN, J., being disqualified, did not participate; CLIFFORD SCHNELLER, Judge of Third Judicial District, sitting in his stead.