**Margaret ORWICK, Plaintiff and Respondent,**

v.

**Glenn ORWICK, Defendant and Appellant.**

**Civ. No. 8418.**

Supreme Court of North Dakota.

Oct. 26, 1967.

Conmy, Conmy & Feste, Fargo, for plaintiff and respondent.

Duffy & Haugland, Devils Lake, for defendant and appellant; Ella Van Berkom, Minot, of counsel.

STRUTZ, Judge.

This is an action for divorce, and comes here on demand for trial de novo. The trial court granted the plaintiff an absolute decree of divorce, and awarded the plaintiff use of the residence of the parties on the farm, with a yard consisting of land running 200 feet in each direction from such residence. The decree further provided that, should the plaintiff desire to move to another town or city within seventy-five miles of the present residence, the defendant would be required to provide her with a house of comparable size, structure, convenience, and cost to the present residence. The decree also provided that the title to such residence remain in the defendant, subject to a life estate in the plaintiff, or until the plaintiff should remarry; that the defendant should pay to the plaintiff the sum of $400 per month on or before the fifth of each month after the entry of judgment, until Glynn, the elder of the two children of the parties, reaches the age of twenty-one years, and that at such time the payments to the plaintiff should be reduced by $100 per month until the second child, Louren, reaches his twenty-first birthday; that from the date of the twenty-first birthday of such second child the payments should be reduced to $200 per month for the balance of the plaintiff's life or until she remarries. Should the plaintiff remarry before the said children, or either of them, reach the age of twenty-one years, the amount to be paid to the plaintiff by the defendant should thereupon be reduced by $200 per month. In addition to the alimony and support payments, the court made certain provisions for division of property.

The plaintiff's cause of action was based on the statutory ground of extreme cruelty. The acts of the defendant alleged by the plaintiff to constitute extreme cruelty were that the defendant spent a great deal of his leisure time away from home and that he would not return home until late at night; that the defendant would drink and spend Saturday night of each week away from home, engaged in this activity; that the defendant had called the plaintiff a "crab" and a "battle-axe" in front of the children and had degraded and insulted her in front of the children; that the defendant had refused and neglected to properly support the children and the plaintiff, and expected the plaintiff to use the social-security payments which she received as a result of the death of her first husband for purchase of groceries; that the home of the parties was poorly furnished; and that all of such conduct on the part of the defendant caused the plaintiff grievous mental and physical suffering.

The defendant denied the plaintiff's allegations, and counterclaimed for a divorce against the plaintiff on the ground of extreme cruelty. At the trial, however, the defendant failed to produce any evidence to support either the allegations of his answer or of his counterclaim, and the trial court found for the plaintiff on her cause of action based on the extreme cruelty of the defendant.

■ In view of the fact that the case is here for trial de novo, we must, of course, review the findings and the conclusions of the trial court and determine if such findings and conclusions are supported by the evidence in the case. Henry v. Henry, 77 N.D. 845, 46 N.W.2d 701; Dahl v. Dahl (N.D.), 97 N.W.2d 844; Belt v. Belt, 75 N.D. 723, 32 N.W.2d 674.

■ Whether acts complained of have inflicted grievous mental suffering upon the complaining party in a divorce action is a question of fact to be determined from all of the evidence, facts, and circumstances of the case. Mahnken v. Mahnken, 9 N.D. 188, 82 N.W. 870; Rindlaub v. Rindlaub, 19 N.D. 352, 125 N.W. 479; Raszler v. Raszler (N.D.), 64 N.W.2d 358.

■ Upon a trial de novo, appreciable weight will be given to the findings of the trial court. Bourrett v. Bourrett (N.D.), 99 N.W.2d 325.

Thus we first must consider the correctness of the trial court's findings of fact and conclusions of law in the light of the evidence produced at the trial.

 It is elementary that the plaintiff has the burden of proof to establish grounds for divorce, and she must establish her cause of action by clear and satisfactory evidence to support the allegations of her complaint. The plaintiff's complaint in this case alleges extreme cruelty on the part of the defendant. Our statute makes extreme cruelty one of several grounds for divorce in this State. The statute defines "extreme cruelty" as follows:

"Extreme cruelty is the infliction by one party to the marriage of grievous bodily injury or grievous mental suffering upon the other." Sec. 14–05–05, N.D. C.C.

Our statute also provides that no divorce may be granted upon the uncorroborated testimony of the parties; that the court must require, in addition to the testimony of the parties, corroboration of the acts alleged. Sec. 14–05–19, N.D.C.C.

Does the evidence produced by the plaintiff in this case disclose such conduct on the part of the defendant as to show that his conduct inflicted grievous bodily injury or grievous mental suffering upon the plaintiff; and does the record show that the plaintiff's testimony as to acts of extreme cruelty is corroborated, as required by law?

The plaintiff's evidence to establish her cause of action showing the defendant guilty of extreme cruelty is very meager. In fact, there is so little evidence on this point that we set it out in full:

"Q. (By Mr. Feste) Mrs. Orwick, during the course of your marriage to Glenn has he on various occasions absented himself from the family home for long periods in the evening and going into the early morning hours?

"A. Yes

"Q. And what affect has this had upon you?

"A. Well, it made me very nervous and I think it upset our household and I think it's very bad for the children.

"Q. Now, has he also on occasions embarrassed you and ridiculed you in front of some of your friends?

"A. Well, in front of the hired men and the children.

"Q. And have there been occasions when you have been out with other couples where he has made fun of you and upset you?

"A. Well, where we would go out and then he would go off and leave me and leave me sitting by myself. Even when I first came up here before I knew anyone.

"Q. What affect did this have on you?

"A. Well, it made me very unhappy and very nervous.

"Q. Did it make you extremely upset?

"A. Yes.

"Q. And did it make you extremely nervous?

"A. Yes.

"Q. And on occasions did it cause you to break down and cry?

"A. Yes, many times.

"Q. Have there been occasions when your husband has slapped you?

"A. Yes.

"Q. And what affect did this have on you?

"A. Well, it made me very nervous and cry and upset.

"Q. And did it have the effect of causing the marriage to go on the rocks, so-to-speak?

"A. Yes.

"Q. And did all of the conduct that you have talked about have the effect of opening the chasm between you and Glenn, making it breach?

"A. Yes."

At this point in the trial, the court indicated that he felt the evidence was sufficient to establish plaintiff's cause of action, and no further testimony was introduced. The corroboration of plaintiff's testimony is also meager. After asking the plaintiff's corroborating witness her name, the examination continued as follows:

"Q. * * * Do you know the Plaintiff and the Defendant in this action?

"A. Yes, I do.

"Q. And how long have you known Margaret Orwick?

"A. Well, since she came here in '63, I think it was.

"Q. And have you known her ever since and even before her marriage to Glenn Orwick?

"A. Yes.

"Q. How long have you known Glenn Orwick?

"A. I've known him, well, ever since I can remember.

"Q. Now you've heard the testimony of Margaret Orwick here this morning?

"A. Yes.

"Q. To the best of your knowledge is what she stated the truth?

"A. Yes, it is.

"Q. And have you on occasion had an opportunity to observe Glenn and Margaret Orwick together?

"A. Yes, I have.

"Q. And you heard the testimony of Margaret Orwick concerning—have you and your husband had occasion to be with them when you have been out on the town?

"A. Yes, we have.

"Q. And have you heard Glenn make fun of Margaret Orwick?

"A. Well, where he would say things, I mean, that would extremely upset her. Like she said, get up and leave the table and leave her alone there. And that would make her extremely upset.

"Q. And this had the effect of upsetting her?

"A. Yes, it did.

"Q. And did she cry?

"A. Yes, she did.

"Q. Now, also, have you had occasion to observe Margaret when she has come to your home?

"A. Yes.

"Q. And what has she said with regard to what has gone on between she and Glenn?

"A. Well, she would come to the house and she would be crying and probably make a telephone call from there. I can't remember, you know, exactly word-for-word what she would say, but she would be real upset and would be crying.

"Q. And this was a result of some—

"A. Argument.

"Q. —disagreement that she'd had with Glenn?

"A. Yes."

The above is absolutely the only evidence on the question of extreme cruelty on the part of the defendant that was submitted to the trial court. It is true that the trial court felt that this was adequate, but the case is here de novo, and this court must determine whether the record as made is sufficient to justify the awarding of a divorce on the ground of extreme cruelty.

■ Before a court in this State is justified in terminating the sacred relationship of marriage, the party bringing the action must bring himself or herself within the provisions of our law governing the granting of a divorce. This should be true especially where there are minor children who have been born of the marriage. We have read and reread the evidence in this case and we cannot find that the conduct of the defendant, as shown by the record, amounted to extreme cruelty as defined by our statute. The evidence offered by the plaintiff is, at best, an assertion that certain acts of the defendant, not specified, made her unhappy and nervous. Giving the findings of the trial court appreciable weight, as we are required to do, we find no evidence in the record which would justify a finding that the defendant's conduct constituted extreme cruelty as defined in our law. It is true that in order to establish that the defendant was guilty of extreme cruelty it need not be shown that he committed actual violence against the plaintiff [Kucera v. Kucera (N.D.), 117 N.W.2d 812]; his conduct, to constitute extreme cruelty, may entail either bodily injury or grievous mental suffering [Strobel v. Strobel (N.D.), 102 N.W.2d 4]; and the trial court is given considerable discretion in determining what actually constitutes extreme cruelty in any given case. Yet there must be some evidence of acts on the part of the defendant which are unjustifiable and which so grievously wound the mental feelings of the plaintiff as to impair the plaintiff's bodily health or cause destruction of the ends of the marriage. Thompson v. Thompson, 32 N.D. 530, 156 N.W. 492; Fleck v. Fleck, 79 N.D. 561, 58 N.W.2d 765. See also 24 Am.Jur. 2d, Divorce and Separation, Secs. 35–40, p. 205 et seq.

■ No such conduct is disclosed by this record, and therefore the judgment granting the plaintiff an absolute decree of divorce must be reversed. However, in view of the fact that the trial court prevented the plaintiff from introducing additional testimony, we feel that it would be proper, under the circumstances, to the accomplishment of justice, to order a new trial.

The judgment of the trial court awarded the custody of the children to the plaintiff. This is not challenged on appeal, and we believe the custody of the children should remain with the plaintiff. We further direct that the trial court have authority to vacate or modify the order awarding the custody of the children whenever necessary or proper, if the best interests and welfare of the children so require. Sec. 14–05–22, N.D.C.C.

The court provided in its judgment for a division of the property of the parties. This division was made pursuant to Section 14–05–24, North Dakota Century Code, which provides that when a divorce is granted the court shall make an equitable distribution of the real and personal property of the parties.

This court has held that this statute authorizes a division of property between the parties only if a divorce is granted by the court. Hoellinger v. Hoellinger, 38 N.D. 636, 166 N.W. 519.

■ Since we must set aside the decree of divorce in this case, for reasons already mentioned, the division of the property must also be set aside. However, even though a divorce is denied, maintenance for the wife and the children may be provided for. Azar v. Azar (N.D.), 112 N.W.2d 1; Mann v. Mann (N.D.), 120 N.W.2d 390.

The trial court having made provision for the temporary support and maintenance of the plaintiff and the children pending appeal, and for costs and attorney fees in connection with the appeal to this court, no further allowance is made for such purposes in this court.

The judgment of the district court is reversed, and the case is remanded for a new trial on all of the issues in the case.

TEIGEN, C. J., and KNUDSON, J., concur.

PAULSON, Judge (dissenting).

I dissent.

I believe that the plaintiff has proved her cause of action for divorce, which was based upon the statutory ground of extreme cruelty, by a preponderance of the evidence. A review of the record discloses that the plaintiff testified that her husband, the defendant, absented himself from the family home for long periods of time in the evenings and going into the early morning hours and that such activity on the part of the defendant toward the plaintiff made her very nervous and, as a result, upset the entire household; that, in addition thereto, her husband on occasions embarrassed her and ridiculed her in the presence of her friends, particularly in front of the hired men and the children. The plaintiff further testified that the defendant's conduct made her very unhappy, very nervous, and extremely upset and that, as a result of such unhappiness and extreme nervousness, she would break down and, many times, cry. There is also evidence in the record that the defendant physically abused the plaintiff by slapping her on occasion, and that none of such testimony was disputed.

It is true that, in order to secure a divorce under our statutes, it is necessary that the parties' testimony must be corroborated. The corroborating witness in this case was Jean Ann Kouba, who testified she had

known the plaintiff, Margaret Orwick, for a period of more than three years, and she had been acquainted with the plaintiff before her marriage to the defendant. This witness also testified that she had known the defendant ever since she could remember; in addition thereto, she was present during the testimony which was offered by Margaret Orwick and verified said testimony by indicating and positively stating that the testimony given by Margaret Orwick was the truth. She further buttressed the testimony of the plaintiff by stating that she had personally observed the plaintiff and the defendant when they had attended various social activities together and she testified she had personally heard statements made by the defendant that would extremely upset the plaintiff, and that she observed that he would get up and leave the table and leave plaintiff alone, which would extremely upset the plaintiff and would result in the plaintiff shedding tears. In addition thereto, the corroborating witness testified that she had observed the plaintiff at other times when the plaintiff would be extremely upset, and that the plaintiff at such times came to Mrs. Kouba's home and exhibited signs of emotional disturbances which resulted from disagreements between the plaintiff and the defendant.

It is particularly interesting to note that, at the conclusion of the testimony of Mrs. Kouba, the judge asked the defendant's attorney if the testimony as to the cause of divorce was sufficient and, in reply, the defendant's attorney stated that such testimony was sufficient. No attempt was made by defendant's counsel to cross-examine or question the plaintiff or Mrs. Kouba, the corroborating witness; nor did the attorney for the defendant call the defendant or any other person to the witness stand to refute or deny any of the testimony which was given by the plaintiff, or the testimony of Mrs. Kouba as to the grounds for divorce.

I wish to further point out and indicate that the attorneys for the plaintiff and the

defendant agreed that the custody of the two minor children should be awarded to the plaintiff, and further stipulated that the plaintiff was a fit and proper person to have the custody of the children.

The judge, to reinforce the testimony, requested that the parties, through their attorneys, stipulate that the plaintiff could proceed and obtain the divorce in plaintiff's behalf without in any way affecting the property rights of either party, and the respective counsel for plaintiff and defendant so stipulated and agreed.

As a further basis for affirming the judgment of the district court, with reference to the granting of the divorce, it is interesting to note that the record further reveals that the defendant's attorney requested that the plaintiff's complaint be amended to include the second child, who was born after the commencement of the divorce suit.

Although the evidence as to the cause of divorce could have been much more specific, such evidence did, however, generally disclose unexplained conduct on the part of the defendant toward the plaintiff which made her very nervous, upset, and unhappy. I believe that the evidence establishes that the defendant caused the plaintiff grievous mental suffering, which conduct justified the court in granting a divorce to the plaintiff. To require the plaintiff to describe in detail all of the offensive conduct of the defendant under the circumstances of this case would result only in unduly lengthening the proceedings and, further, would greatly lessen the probability of reconcilement of the parties in the future.

The majority opinion apparently stresses the fact that the allegations of the plaintiff's complaint were sufficient, but that there was a lack of proof and insufficient corroborating evidence. If material acts are corrobprated, it may be assumed that uncorroborated testimony of the plaintiff to other acts is true. Wallace v. Wallace, 112 N.J.Eq. 292, 164 A. 565. A

further analysis of proof of extreme cruelty, such as in this case, must necessarily consider the types or degrees of harm which are sufficient to prove extreme cruelty. This would, of course, involve the frailty, strength, or sensitiveness of the party affected, and it has been held that a nervous condition can well be sufficiently serious and harmful to meet the requirements of demonstrable harm. In Thompson v. Thompson, 16 Wash.2d 78, 132 P.2d 734, 735, the Washington court held that, under a statute allowing a divorce for cruel treatment or personal indignities rendering life burdensome:

"Language can, and frequently does constitute cruel treatment and render life burdensome. The test, however, is subjective rather than objective. It is not the words used, but the effect of them upon the aggrieved party that is determinative. * * *"

Detjen v. Detjen, 40 Wash.2d 479, 244 P.2d 238. In 1 Nelson, Divorce and Annulment (2d ed. 1945) § 6.12, p. 241, it is stated:

"A good many decisions recognize that the relative frailty, sensitiveness or hardihood of the parties is a factor for consideration in determining whether there has been cruelty within the intendment of the divorce statutes. This factor has also been considered in determining whether a course of conduct amounted to 'personal indignities.' As said in one case [Button v. Button, 95 Ore. 578, 188 P. 180], what would be cruel to a delicate, sensitive woman might not be so to a 'brawling fishwife.' * * * The degree of intelligence, refinement and delicacy of health and sentiment, according to this line of authority, are matters for the court to weigh with others in determining whether the conduct complained of was cruel. * * *"

It appears that Margaret Orwick was a well-educated woman, in that she was a graduate medical technician and, in addition, had been an airline hostess for a

period of time. The record further reveals that Margaret Orwick had been previously married and that she was accustomed to living in fine surroundings and in associating with educated and intelligent persons of substantial income. The record further reveals that she had resided in larger cities and her mode of living changed considerably after her marriage to Mr. Orwick. She was apparently a sensitive woman who was hurt deeply by her husband's conduct.

This court, in Savre v. Savre, 77 N.D. 242, 42 N.W.2d 642, affirmed the district court in denying a divorce to the plaintiff. However, the *Savre* case is distinguished from the case at bar in that in *Savre* this court found that there was not a continuous course of fault-finding, threats, or other acts intended to aggravate and annoy the other party to the marriage, and thus that the acts did not cause such a degree of mental suffering as to constitute a ground for divorce on the ground of extreme cruelty. This court in the *Savre* case stated that the record establishes that the plaintiff and defendant were incompatible and that incompatibility is not a ground for divorce in the State of North Dakota. I think the facts in the instant case disclose more clearly acts of cruelty and the degree thereof.

Again this court, in Henry v. Henry, 77 N.D. 845, 46 N.W.2d 701, held that the plaintiff's allegations that the defendant treated her with extreme cruelty which caused her grievous mental anguish were not sustained by the evidence. The factual situation in the *Henry* case is vastly different from the facts in this case, in that the *Henry* case was a contested action in the district court, whereas in the case at bar there was no evidence presented by the defendant to refute the testimony of the plaintiff or her corroborating witness, Jean Kouba. The *Henry* case is further distinguished on the ground that the evidence which was presented at the trial in the district court failed to indi- cate that the defendant had conducted himself in such a manner as to come within the provisions of the statute providing for a divorce on the ground of extreme cruelty.

In this case the district judge had the opportunity of observing the witnesses, that is, Margaret Orwick and the corroborating witness, Jean Kouba, as well as the defendant Glenn Orwick, and was able to determine from the testimony the credibility of the witnesses and the inferences to be drawn from their testimony. Pauly v. Haas, 84 N.W.2d 302 (N.D.). The trial judge, after hearing the evidence, was able to better determine whether or not the plaintiff was entitled to a divorce and so indicated in the findings of fact, which are a part of the record. As stated in 24 Am.Jur.2d, Divorce and Separation, § 53, p. 223:

"In order that any type of mental cruelty may constitute a cause of action it must produce a result which is variously described as grievous mental suffering, or impairment of health, or endangering life or limb. * * *

"The question whether the accusations have caused the required effect upon mind and body is one of fact; * * * it has been held that the court may presume that the charges have had their natural and probable consequence of causing mental suffering." [143 A.L.R. 629, 642.]

This court has followed the principles enunciated in Nelson, Divorce and Annulment, supra. In Mahnken v. Mahnken, 9 N.D. 188, 82 N.W. 870, 872, the court stated:

" * * * courts here tread upon delicate, and perhaps uncertain, grounds. The differences in mental characteristics are as varied as the differences in facial expression. The effect upon two minds of the same act or language may be entirely different, and the effect upon one may be incomprehensible to the other. It is clear, then, that no standard can

be erected, no measurements given, and no criterion established by which to gauge mental suffering. This is a point upon which this court would be inclined to give much weight to the views of the trial court. The complainant was before that court, and was examined at great length. All her mental characteristics would be much more apparent there than they can be from a study of the record. * * *"

Again, in Swanson v. Swanson, 75 N.D. 332, 28 N.W.2d 73, this court held that:

"Whether one party to an action for divorce has inflicted grievous mental suffering upon the other is a question of fact to be determined from all the circumstances in the case."

And, in Raszler v. Raszler, 64 N.W.2d 358 (N.D.), this court said:

"In an action for divorce upon the ground of extreme cruelty the question of whether one party to the marriage has inflicted grievous mental suffering upon the other is one of fact to be determined from all of the circumstances of the case, taking into consideration the sensibilities of the litigants, their intelligence, viewpoints, sentiments, and health."

This court in making such a determination de novo will give appreciable weight to the findings of fact of the trial court. Swanson v. Swanson, supra; Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697.

Again, it is interesting to note that, in the case of Hodous v. Hodous, 76 N.D. 387, 36 N.W.2d 552, this court held and defined "mental anguish' as being the equivalent of grievous mental suffering.

In conclusion, I am of the opinion, and believe, that where the trial court had the opportunity to hear and observe the litigants testify in detail concerning the property of the parties, the trial court's findings relative to the division of the property should not be set aside unless

there has been a showing that the trial court abused its discretion. Fischer v. Fischer, 139 N.W.2d 845 (N.D.). I find no abuse of discretion here. I accordingly would affirm the trial court's judgment in all respects.

ERICKSTAD, Judge.

I concur in Judge Paulson's dissent.