AGNES JOHNSON, Appellant, v. LEWIS B. JOHNSON, Respondent.

(180 N. W. 794.)

**Divorce — evidence held insufficient to show wilful neglect and extreme cruelty.**

In an action for divorce, where the plaintiff alleged as grounds for divorce wilful neglect and extreme cruelty, the evidence is examined and it is *held* that the grounds alleged are not established.

Opinion filed November 26, 1920. Rehearing denied January 3, 1921.

Appeal from the District Court of Sargent County, *Allen,* J. Affirmed.

*W. S. Lauder,* for appellant.

A wife is no longer regarded as her husband's chattel. The husband is no longer regarded as the superior and the wife as the inferior as in the days of Blackstone. 2 Sharswood's Bl. Com. p. 142; Rott v. Goehring, 33 N. D. 413.

Extreme cruelty is the infliction by one party of a marriage of grievous bodily injury or grievous mental suffering upon the other. Comp. Laws 1913, § 4382.

Mental suffering is ground for a divorce in the absence of any bodily injury. Mahnken v. Mahnken, 9 N. D. 118.

Any unjustifiable conduct upon the part of either the husband or

wife which so grievously wounds the mental feelings of the other or so utterly destroys the peace of mind of the other as to utterly destroy the legitimate ends and objects of matrimony constitutes extreme cruelty although no physical violence may be inflicted or even threatened. Carpenter v. Carpenter, 2 Pac. 122; Gibbs v. Gibbs, 18 Kan. 419; Whitmore v. Whitmore, 49 Mich. 417; Wheeler v. Wheeler, 53 Iowa, 511; Smith v. Smith, 6 Or. 100; Beyer v. Beyer, 40 Wis. 254.

*Wolfe & Schneller,* for respondent.

The judgment of the trial court upon the facts must have weight and influence in this court, especially when based upon the testimony of witnesses who appeared in person before that court. Christensen v. Farmers Warehouse Asso. 5 N. D. 438; Merchants Bank v. Collard, 33 N. D. 556; Wilke v. Sassen (Iowa) 99 N. W. 124; Birdzall v. Birdzall (Mich.) 77 N. W. 1114; Langmann v. Guernsey (Neb.) 145 N. W. 270.

BIRDZELL, J. This is an action for divorce. The plaintiff, Agnes Johnson, was married to the defendant on June 22, 1918. She was a little past sixteen years of age and the defendant was twenty-five. He entered the military service during the month following his marriage, and remained in the service for some five months or until the middle of December. On November 28, 1918, approximately five months after the marriage, a child was born. During confinement the plaintiff was cared for by her mother, who lived in a small, one-story, two-room house in Havana, in this state, the defendant at the time being in military service at Camp Dodge, Iowa. Upon receiving his discharge from the Army, the defendant returned to Havana about the 22d of December, 1918, living with his wife and her mother in the small, two-room house until about the 13th of January, 1919, when he left for Minneapolis. He returned the 21st of January, and the complaint in this action was verified the 25th of the same month.

The complaint alleges two grounds for divorce: Wilful neglect and extreme cruelty. After trial in the district court, judgment was entered dismissing the complaint. The plaintiff appeals and demands a trial *de novo.*

Wilful neglect is defined in the statute, § 4384, Comp. Laws 1913, to be: ". . . the neglect of the husband to provide for his wife the

common necessaries of life, he having the ability to do so; or it is the failure to do so by reason of idleness, profligacy, or dissipation."

While an attempt was made upon the trial to substantiate the allegations of wilful neglect, only minor attention is paid to them in the appellant's brief. After a careful examination of the record, we are of the opinion that this charge is not supported by the evidence. While it does not appear that the defendant made generous provision for his wife, it does appear that he entered the Army a short time after the marriage; that as a soldier he made an allotment for her benefit under regulations prescribed by the Federal government, and that a similar amount was added by the government. These payments, however, were not actually received by the wife until the fall of 1918. In addition to these payments, the defendant sent her a small amount of cash, $11. He apparently had no money at the time he was married, for his wife's mother, who was a working woman, lent him the money to pay the expenses of the marriage. He had an interest in his father's estate of approximately $100,000, amounting, perhaps to less than $10,000, which at that time had not been distributed. He was out of the Army but a short time before this suit was begun, and during that time he had paid some of the expenses incident to the maintenance of his wife and child. The evidence does not warrant a finding of wilful neglect.

The appellant places principal emphasis upon the charge of extreme cruelty. It is not contended that there were any acts of physical violence, but rather that the conduct of the defendant was such as to cause the plaintiff to undergo grievous mental suffering. The conduct relied upon as establishing this form of cruelty may be considered under two heads: First, his friendly relations with other women; and second, acts evidencing a depraved moral nature. His relations with other women were not established. The charge was based principally upon some letters which he had received while in the military service, and which were found by his wife in his trunk upon his return from the Army. It is satisfactorily established in the record that these letters, which were written from Eagle Grove, Iowa, were not intended for the defendant but for another person of the same name who had enlisted from Eagle Grove. The letters are perfectly innocent in themselves, and do not evidence any wrongful relations between the writers

and the recipient or the person for whom they were intended. The defendant claims that this matter was explained to his wife before the suit was begun. There are also some pictures of the defendant taken in the company of ladies. These are likewise innocent pictures, and it is also shown that they were taken at a time before the defendant had even met his wife.

The principal argument in support of this charge is drawn from evidence that the defendant exhibited to his wife lewd pictures, lascivious compositions, and paraphernalia evidencing a depraved moral nature, and that these acts or some of them took place at a time when, owing to the delicate condition of her health, she was subjected to extreme mental suffering on account thereof. It is not necessary in this opinion to describe the character of the matter so exhibited by the defendant. These acts deserve the condemnation which counsel for the appellant has given them, but they do not necessarily amount to extreme cruelty. However much they are inclined to shock the moral sensibilities of persons of refinement, it is obvious that their effect in the particular case depends upon the manner in which they are received. The testimony of the plaintiff herself, aside from her direct statements, does not disclose that she was extremely shocked by these vile exhibitions. A widowed cousin of the defendant, who lived near the parties in Havana, testified to matters concerning the exhibition of these lascivious compositions and lewd pictures in a manner that shows them to have been received by the plaintiff either with satisfaction, indifference, or tacit approval. She stated that on one occasion the plaintiff and defendant came to her house in the evening, and the plaintiff asked the defendant if he "had brought that dirty poem along," and he said "No;" that he went and got a number of them, and that he and Mrs. Johnson together picked out the "best" (the dirtiest?) one and the plaintiff read it; that his wife insisted that he should read it and that they all laughed. There is nothing in the testimony of the plaintiff which evidences extreme shock at these matters. On the other hand, we would not be justified, from her testimony, in saying that she chose to live on the same moral plane as her husband. There is no reason to believe that this girl of tender years had so far abandoned her natural modesty and inherent feminine virtue as to initiate such

indecent subjects of domestic intercourse; but it does not follow that they were necessarily so abhorrent to her as to cause grievous mental suffering. This depends so largely upon the sensibility of her moral nature, which could only be known to others as reflected by her presence and demeanor, that we who have only the cold record of the testimony are at a disadvantage. The trial judge, who had a superior opportunity to observe the parties and who held that obscenity of the character complained of might constitute extreme cruelty, did not feel warranted in finding that the plaintiff was shocked to the point of grievous mental suffering by the attitude and conduct of the defendant in relation to the matters that he exhibited to his wife. In the light of this record, we do not feel justified in overturning the findings of the trial court.

It was also shown that *after this action was brought* the defendant wrote a letter in which he offered to furnish a home for his wife and in which he forbade her to bring her mother along. The feeling exhibited in that letter toward the mother was anything but what it should have been, and would doubtless cause heartache to an affectionate child, particularly one in the unfortunate situation of this plaintiff. But we are not warranted in saying that the writing of this letter would constitute extreme cruelty.

Appellant's counsel has ably presented the facts which he contends altogether support the charge of extreme cruelty, but we do not find in this record sufficient evidence that the defendant's conduct amounted to legal cause for divorce. The judgment appealed from is affirmed.

CHRISTIANSON, Ch. J., and BRONSON, J., concur.

GRACE, J. I dissent.

ROBINSON, J. (dissenting). From the opinion as written in this case by Mr. Justice Birdzell, I do emphatically dissent. The plaintiff has a mother who brought her into the world and who has been ever kind and good to her, and, in a letter to the plaintiff, defendant went out of his way to gratuitously insult and abuse the mother, as well as her daughter. He wrote thus:

Now, in so far as your mother is concerned, let me explicitly inform

you that under no circumstances will I have anything to do with her. I do not want her around me in any way or at any time. I am perfectly willing to provide for you a home, but it will have to be your home and my home. Under no circumstances will I allow you to bring your mother into same, nor yet will I be in any way responsible for her support or maintenance."

The letter is really brutal, and it is in keeping with the general conduct of the defendant toward his wife. It shows that he had no regard or respect for either the mother or her daughter. The letter made it impossible for the plaintiff to live with defendant as his wife unless as his mere dog, and without any feeling of self-esteem or self-respect. No judge would hold that his own daughter should live as the wife of a man guilty of writing her a letter so insulting and degrading. The only proper response to such a letter was an action for divorce.