## RASZLER v. RASZLER.

### No. 7347.

Supreme Court of North Dakota.

April 21, 1954.

Rehearing Denied May 26, 1954.

T. A. Sailer and John A. Richardson, Hazen, for plaintiff and respondent.

Floyd B. Sperry, Golden Valley, for defendant and appellant.

MORRIS, Chief Justice.

The plaintiff seeks a divorce from the defendant on the grounds of habitual intemperance and extreme cruelty. The parties were married in 1925. They have five

living children whose names and ages, given at the trial June 10, 1952, are as follows: Arthur aged 26, Delores 23, Albin 18, Wilma 16, and Edna 14. The plaintiff's age was given as 47 and the defendant's 51. Neither of the parties is in good health. The plaintiff is extremely nervous and the defendant is afflicted with skin cancer which has resulted in an operation on his lip and requires medical treatment from time to time. The defendant earns his living by farming and part time work with the State Highway Department. He has supported his family reasonably well and provided an adequate residence in which to live.

The plaintiff testifies that the defendant has been a consumer of intoxicating liquor for the last fifteen years in progressively increasing amounts; that during the last two years he has come home in an intoxicated condition once or twice a week and on these occasions brings liquor home. This is whiskey in half pint bottles, and sometimes pints. On these occasions he swears at the plaintiff and calls her all kinds of names. Sometimes this has taken place in front of the children, particularly the daughter Wilma. The defendant has threatened to strike the plaintiff at times and on one occasion twisted her arm. He was not seeking to compel her to imbibe but he was trying to force her to go to the bars and check on how many drinks he had had. As a result of this conduct the plaintiff became extremely nervous. She was finally compelled to leave the family abode and move into a house which she had inherited in the Village of Beulah. The younger children accompanied her. The defendant remained in the house which he owns, located on a tract of land consisting of thirty-six acres lying adjacent to the Village of Beulah. The children visit the defendant frequently and do some housekeeping for him. The plaintiff had been living apart from the defendant about seven months prior to the trial. Her nervous condition is now improving.

In addition to the property already mentioned, the defendant owns a section of land about six miles north of Beulah, a full line of farm machinery, forty-five head of cattle, a car, a truck, and some cash.

The testimony of the daughter Wilma corroborates the plaintiff as to the defendant's drinking but places the incidents as three or four times a month. She was also a witness to the arm twisting episode and says that her mother screamed with pain and that afterwards her arm was swollen up on the shoulder. She also heard her father curse her mother and call her filthy names. That was in August 1951. The eldest son, Arthur Raszler, testified that he lives out on the farm, consisting of six hundred forty acres, about five miles from his father's home; that he farms half of the section of land and his father farms the other half; and that his father comes home intoxicated three or four times a month and is incapacitated from one to three days at a time and to that extent his father's intoxication interferes with the working operations of the farm. He never saw his father strike his mother but did hear him curse her and abuse her on more than one occasion.

The defendant categorically denies that he drinks to excess; that he ever twisted plaintiff's arm or hurt her in any way. He says that, while he has occasionally taken a drink of intoxicating liquor, he has never become abusive to his family; that he has never been arrested for drunkenness; that he drives a car and a truck and has never been put in jail for driving while under the influence of liquor. He says that he never swore at his wife or called her vile names but that she is highly nervous and irritable and they have had some arguments. He denies that he had ever missed work because of drinking. He produced several witnesses from around the Village of Beulah, two being former chiefs of police, who said they had never seen him intoxicated. On the other hand, the present chief of police testified that on one occasion in the spring of 1952 the defendant was too drunk to drive his car and the chief took him home after warning him not to drive.

The trial court found that the defendant was habitually intemperate and that for

more than a year preceding the commencement of the action the intemperance of the defendant was of such a degree that during a portion of the time he was unable to properly take care of his work and that such intemperance inflicts great mental anguish upon the plaintiff. He also found that the plaintiff conducted herself as a good wife but that the defendant treated the plaintiff in a cruel and inhuman manner, cursed her in the presence of the children, called her vile and filthy names, threatened to strike her on numerous occasions, came home intoxicated, and physically injured her by twisting her arm, causing her pain and suffering, both physical and mental.

The court granted the plaintiff a divorce upon the grounds of habitual intemperance and extreme cruelty. He awarded her custody of the minor children, required the defendant to pay forty dollars per month for the support of the minor Edna Raszler, and ordered certain payments to be made to the plaintiff, and decreed a division of the property which we will later discuss in detail. The defendant appeals and demands a trial de novo.

 Among the causes for which a divorce may be granted provided by Section 14–0503, NDRC 1943 are extreme cruelty and habitual intemperance. Section 14–0505, NDRC 1943 states that:

"Extreme cruelty is the infliction by one party to the marriage of grievous bodily injury or grievous mental suffering upon the other."

Section 14–0508, NDRC 1943 provides that:

"Habitual intemperance is that degree of intemperance from the use of intoxicating drinks, morphine, opium, chloral, cocaine, or other like narcotic drugs, which disqualifies the person a great portion of the time from properly attending to business, or which reasonably would inflict a course of great mental anguish upon the innocent party."

This court has said:

"Under section 2739, Rev.Codes, [Section 14–0505, NDRC 1943], a decree of divorce may be granted in this state by reason of the infliction of grievous mental suffering, although such suffering produce no bodily injury.

"But whether or not, in any given case, grievous mental suffering has been inflicted upon the complaining party, is purely a question of fact to be determined from all the circumstances of the case, including the mental characteristics of the party complaining, so far as the same may be developed in the case." Mahnken v. Mahnken, 9 N.D. 188, 82 N.W. 870.

The record clearly shows that the defendant frequently used intoxicating liquor to excess but not to the extent that it seriously interfered with his occupation or greatly reduced his earning power. His consumption of liquor increased during the two years preceding the trial, but whether it has reached the stage of habitual intemperance as that term is used and understood in law is a matter concerning which there is considerable doubt. It is clear, however, that defendant's drinking was a major contributing factor to a long continued course of conduct on his part sufficiently unseemly and obnoxious to sorely wound the sensibilities of a sensitive and nervous woman and inflict upon her grievous mental suffering. During the two years preceding the trial her nervousness, like his drinking, has increased.

 We have before us the written record with its serious conflict of words which we read without the presence of those who uttered them or the atmosphere of the trial. Such a record does not always convey a true picture of mental reactions and physical conditions. This record is very sketchy in these respects. The sensibilities of the litigants, their intelligence, viewpoints, sentiments, and health are factors in determining whether grievous mental

suffering results from the conduct of one spouse toward the other. Where, as in this case, the testimony of each of the parties is consistent but conflicts with that of the other, the personal presence of the witness gives to the trial court an advantage over the appellate court which must make its determination from the cold record. These circumstances have led us in trials de novo in this court to say that whether the acts of one party in a divorce action have inflicted grievous mental suffering upon the other is a question of fact to be determined from all the circumstances in the case and that this court in making such a determination de novo will give appreciable weight to the findings of fact of the trial court. Swanson v. Swanson, 75 N.D. 332, 28 N.W.2d 73; Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697; Buchanan v. Buchanan, 69 N.D. 208, 285 N.W. 75; Johnson v. Johnson, 50 N.D. 696, 197 N.W. 773; Johnson v. Johnson, 46 N.D. 606, 180 N.W. 794.

■ The appellant emphasizes the case of McBride v. McBride, 43 N.D. 328, 174 N.W. 870, 871, the facts of which appear to be similar to those in the case at bar. The trial court found for the defendant and was sustained on appeal. Two of the judges said that there was no showing that the defendant had been guilty of intemperance or extreme cruelty. One judge merely concurred in the result, while the remaining two members of the court said:

> "A careful reading of the record fails to result in a conviction that the plaintiff has sustained the burden of proof either upon the charge of cruelty or of habitual intemperance. The testimony in relation to the cruelty charges, particularly, is conflicting, and the trial judge, who had the benefit of a better opportunity to weigh the testimony of the witnesses has found against the plaintiff. This finding should stand."

In the case before us the trial court has found for the plaintiff and against the defendant. After giving to this finding the weight to which it is entitled as a deter-mination of fact by the trial court, we conclude that it should not be disturbed.

■ The property rights and interests of the parties were determined by the trial court substantially as follows: The plaintiff retained title to the residence and lots in Beulah which she inherited from her parents and now occupies; each of the parties was decreed to have a half interest in the other real estate, consisting of section 34 and lot 2 of the NW¼ of section 30 all in township 144, range 87, subject to a trust to be administered by the defendant as trustee or by another person appointed by the court if the defendant failed to qualify by July 27, 1952. The parties were decreed to be the owners of the personal property, consisting of household goods and wearing apparel, which they then possessed. The defendant was given title to all of the remainder of real and personal property not otherwise set aside to the plaintiff. The court ordered that the defendant pay the plaintiff two hundred dollars attorney's fees and forty dollars per month for the support of Edna Raszler during her minority. The court further provided that the defendant pay the plaintiff five hundred dollars forthwith, five hundred dollars October 1, 1952, and one thousand dollars October 1, 1953. The judgment was entered August 13, 1952. This judgment, as of the time it was entered, appears to us to be just and equitable. The lapse of time, however, has rendered obsolete the provisions relative to the times of payment and the date of qualification of the trustee.

The judgment is affirmed in all things except dates of compliance above mentioned. With respect to those dates the record is remanded for a determination of dates of compliance by the trial court, either with or without further hearing with respect thereto, as the trial court may decide.

BURKE, SATHRE and GRIMSON, JJ., concur.

JOHNSON, J., did not participate.