Josephine BOURRETT, Plaintiff and Respondent,

v.

Arnold BOURRETT, Defendant and Appellant.

No. 7809.

Supreme Court of North Dakota.

Nov. 20, 1959.

Burk & O'Connell, Williston, for appellant.

A. T. Hackenberg, Williston, Richard H. McGee, Bruce M. Van Sickle, Minot, for respondent.

TEIGEN, Judge.

The plaintiff seeks separation from bed and board alleging extreme cruelty. In her complaint she also alleges defendant had attempted to force upon her a settlement agreement, without advising her of her rights and when she was without the assistance of counsel, that although she had signed the agreement she had repudiated it. She also asks the court to make just and equitable division of the property of the parties, that the defendant be ordered to pay counsel fees and costs, that the defendant be ordered to pay all unpaid accounts, and for such other and further relief as to the court may seem just and equitable in the premises.

The defendant answers generally denying the allegations of cruelty and alleges the settlement agreement pleaded was made between the plaintiff and defendant settling their property rights, that the plaintiff received approximately one-half of all the property accumulated by the parties during their married life, that plaintiff was advised and he prays that the plaintiff's complaint be dismissed. The defendant also counterclaims for an absolute divorce on the grounds of desertion. The plaintiff replied in the form of a general denial.

The trial court found in favor of the plaintiff and judgment was entered granting the plaintiff separation from bed and board, denied the defendant's counterclaim for divorce, ordered that the defendant pay the plaintiff the sum of $250 per month for her support during the period of separation, ordered the payment of certain attorneys fees and costs and provided that the court

"Makes no determination on the question of the division of the property between the plaintiff and the defendant inasmuch as only a separation from bed and board is presently con-

templated, and the property of the parties is not readily divisible at this time."

The plaintiff and defendant were married on October 14, 1948, at Williston, North Dakota. They have no children. They have lived separately since June 24, 1954. On December 20, 1954, the plaintiff commenced this action for separation from bed and board. Judgment was entered in District Court on Oct. 10, 1955, and notice of appeal served on April 7, 1956. The appeal, however, was not filed in this court until December 19, 1958 and argued in January 1959.

The defendant appeals from the judgment and demands a trial de novo.

There is no question of law raised in the case. The controversy is purely one of fact, and the facts must be determined from over 300 pages of testimony. The members of this court have given this testimony full and critical examination, and we reached the conclusion which affirms the judgment of the trial court granting separation. No detailed analysis of the testimony could serve any good purpose. The defendant charges that the plaintiff has wholly failed to sustain the burden of proof which she must sustain in order to prove a ground for legal separation. The District Court, however, thought otherwise and in this this court concurs.

We have before us the written record with its serious conflict of words which we read without presence of those who uttered them or the atmosphere of the trial. Such record does not always convey a true picture of mental reactions and physical conditions. The sensibilities of the litigants, their intelligence, viewpoints, sentiments and health, are factors in determining whether grievous mental suffering results from the conduct of one spouse toward the other. Raszler v. Raszler, N.D., 64 N.W.2d 358, whereas in this case the testimony of each of the parties is consistent in relating incidents of marital

troubles but inconsistent in describing and explaining them, and therefore in conflict. The trial court had the advantage over the appellate court in determining who was telling the truth and such circumstances have led the appellate courts in trials de novo to say that whether the acts of one party in a divorce action have inflicted grievous mental suffering upon the other is a question of fact to be determined from all the circumstances in the case and that the appellate court making such a determination de novo will give appreciable weight to the findings of fact of the trial court. Raszler v. Raszler, supra; Swanson v. Swanson, 75 N.D. 332, 28 N.W.2d 73; Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697; Buchanan v. Buchanan, 69 N.D. 208, 285 N.W. 75; Johnson v. Johnson, 50 N.D. 696, 197 N.W. 773; Johnson v. Johnson, 46 N.D. 606, 180 N.W. 794. It is proper to apply the same rule in an action for separation from bed and board.

Section 14-0601, NDRC 1943 provides:

"A decree of separation from bed and board forever, or for a limited time, may be decreed by a district court of this state, upon such evidence as shall be deemed sufficient, on complaint of a married woman or a married man, for any cause for which a divorce might be decreed."

One of the causes for which a divorce may be granted, provided in Section 14-0503 NDRC 1943, is extreme cruelty.

The trial court found that the defendant had attempted to force a cash separation settlement with the plaintiff without permitting her the benefit of counsel, and had persuaded her to sign the agreement, but that the plaintiff had repudiated this forced agreement after obtaining advice of counsel.

The instrument in question entitled, "Agreement of Separation" was introduced in evidence and testimony adduced by both sides relative to its execution. It was signed by each of the parties to the action.

It purports to be a complete property settlement. Briefly, it provides the plaintiff shall retain a $1,000 deposit in her name with the Williston Co-op. Credit Union, the defendant shall pay the plaintiff an additional $3,500 cash and the plaintiff shall take as her separate property certain items of furniture and her personal belongings. All the rest of the property is released to the defendant. It also provides the plaintiff releases and waives any right that she may have to alimony or support money from the defendant and that the agreement constitutes a full and complete property settlement between the parties and if a divorce is later granted to either party the agreement shall constitute a full and complete settlement of all property rights and the right to support between the parties hereto. The agreement further provides that neither party shall have any right, title or interest to any property, either real or personal, that the other may acquire in the future. The agreement is dated August 2, 1954, about five weeks after the separation and before the commencement of this action.

The plaintiff admits that she signed the property settlement; that she received a check from the defendant in the amount of $3,500. The check, however, had not been cashed and was admitted as an exhibit in this case. There is no evidence indicating what happened to the personal property listed in the property settlement.

The plaintiff in her complaint in this action alleges that the agreement was drawn and signed, but claims that it was the result of the defendant's attempt to force a cash separation settlement without offering the plaintiff the benefit of counsel or informing her of her rights and that she was persuaded to sign such agreement prepared by the defendant's attorney while she, the plaintiff, was not represented by an attorney and that after the signing the plaintiff obtained the advice of an attorney and that she then notified the defendant that the agreement was not acceptable.

The court, in its findings of fact found as follows:

"That the defendant had attempted to force a cash separation settlement with the plaintiff without permitting her the benefit of counsel, and had persuaded her to sign such an agreement but that the plaintiff had repudiated this forced agreement after obtaining advice of counsel."

No specific mention is made of the agreement in the conclusions of law or order for judgment, but the court did not accept its provisions, the court ordered:

"That the court at this time makes no determination on the question of the division of property between the plaintiff and the defendant inasmuch as only a separation from bed and board is presently contemplated, and the property of the parties is not readily divisible at this time."

The court had jurisdiction of the subject matter and the parties.

It is apparent that the trial court did not accept the instrument as an existing property settlement because it provided that the defendant pay alimony or support money to the plaintiff and no determination was made on the question of the division of the property, but the court retained jurisdiction. It clearly appears the court continued jurisdiction over the matter of property and denied the provisions of the settlement agreement.

 The findings of fact that this was a "forced agreement" obtained "without permitting her the benefit of counsel" and that the plaintiff had "repudiated" it is a finding the agreement had been rescinded pursuant to the statutes. Sections 9-0902 and 9-0904, NDRC 1943. The trial court treated it as rescinded.

The defendant in his argument challenges the correctness of the findings of the trial court on the issue. We have considered the

evidence in the case and feel that the findings made by the court are amply sustained by the evidence.

The court ordered the defendant to pay alimony or support money to the plaintiff in the monthly amount of $250, effective September 1, 1955, and on the first day of each succeeding month during the period of separation. The court also ordered the defendant to pay attorneys fees in the amount of $400 and costs and disbursements to be allowed by the clerk. Judgment was entered accordingly. The defendant argues this was unreasonable and excessive.

The record shows the defendant has had substantial earnings during the period of marriage to the plaintiff in the years 1948 through 1954 and according to copies of the Federal Income Tax returns of the defendant admitted in evidence, his adjusted, gross income, plus the untaxed 50 percent of the long term gains reported therein equal $53,532.75, or an average of $7,647.53 a year. The state and Federal Income Tax returns, copies of which are in evidence, indicate total tax, both State and Federal, became due and payable upon these earnings in the amount of $8,384.90 leaving a net income to defendant, after taxes, of $45,147.85, an average of $6,449.69 per year. The record also shows the defendant is the owner of an undivided one-third interest in and to 1,280 acres of farm land, valued by a realtor, at $34.50 per acre, equaling $14,506.66. This farm land, together with an additional 640 acres held in the name of defendant's brother and father, plus an additional 480 acres rented, for a total of 2,500 acres is farmed in partnership by the defendant, his brother and his father, each one receiving one-third of the proceeds therefrom. In addition the defendant is the owner of a home located at Williston, North Dakota, for which he paid $8,600 and is now valued at $15,000. He is the owner of a second home at Williston, North Dakota, which he has sold upon contract for deed, the unpaid balance of which is not shown, and a lot located at Williston, North

Dakota, valued at $500. In addition thereto he owns an undivided one-third interest in over $33,000 worth of farm machinery, after depreciation for income tax purposes. He had grain on hand valued at $4,292 and a balance on deposit at the Williston Credit Union in the amount of $11,241.72, cash on hand in the amount of $656, United States Savings bonds in the amount of $3,700 maturity, cattle valued at $1,800, hogs valued at $400, furniture valued at $2,000, a house-trailer, purchased in 1951, valued at $1,500, and in addition an automobile, a pickup truck and personally owned machinery valued for income tax purposes, after depreciation, at $6,097.13, or a total worth of over $72,000.

The plaintiff, according to the opinion of the doctor, is suffering from neurasthenia which is a weakness of the nerves and of neurocirculatory asthenia which is a weakness of the heart and glands due to nervousness. According to the expert such a person cannot work at times; people suffering from this malady can work for a short time and then actually become so weak they must give up and quit their jobs. He also testified it makes no difference what type of work is attempted. Their nervous system is in such condition that it will not permit them to hold a job for any length of time. The plaintiff was, at the time of separation, under doctor's care and still under the doctor's care at the time of the trial. However, the doctor also testified that her nervous condition may change for the better, although this type of case has instability all through life; that she may improve if she re-adjusts her life with pleasant surroundings, new home and other matters of comfort and the assistance of a psychiatrist. The plaintiff had no separate property, except $1,000 on deposit in the Credit Union which she had used up.

■ The court granting a legal separation may make such suitable allowance which to the court may seem just, having regard for the circumstances of the respective parties.

Section 14–0603, NDRC 1943. "Permanent Maintenance: Division of Property. Upon decreeing a separation, the court may make such order and decree for the suitable support and maintenance of the wife or husband, and children, if any, out of the separate or joint property of the husband and wife, or such division of the joint or separate property of the husband and wife, as may appear just and proper."

Section 14–0604, NDRC 1943, Provides: "Decree of Separation Effect. The decree of separation from bed and board shall confer upon both the husband and wife all the rights of property, business, and contracts as if unmarried, and shall release both husband and wife from all obligations of maintenance, except as may be required by the decree."

Three days were spent in the trial of the action and expert witnesses called.

■ We have carefully considered all of the evidence adduced at the trial and conclude that the amount of support money, attorney's fees and costs allowed by the District Court is fair and equitable to both parties.

The District Court still has jurisdiction in the matter of support money and property adjustment, and if in the future changes occur in the financial, health or other pertinent conditions of the parties the court may, after proper showing, make such adjustments as may be proper in the circumstances.

The judgment of the District Court is affirmed.

The judgment being affirmed, an application pending before us for the reduction of support payments pending the determination of this appeal is denied.

SATHRE, C. J., and BURKE and MORRIS, JJ., concur