Anastasia **VOLTIN**, Plaintiff and Respondent,

v.

Francis **VOLTIN**, Defendant and Appellant.

Civ. No. 8616.

Supreme Court of North Dakota.

Aug. 26, 1970.

 

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for defendant and appellant.

James D. Schlosser, Bismarck, for plaintiff and respondent.

PAULSON, Judge.

This is an appeal by the defendant, Francis Voltin, from the judgment of the district court granting the plaintiff, Anastasia Voltin, a legal separation. Notice of appeal was served and filed on November 14, 1968. Anastasia Voltin died on July 7, 1969. Neither the attorneys for the appellant nor the attorney for the respondent has made a motion for substitution of the party, Anastasia Voltin, on this appeal. However, during oral arguments before this court on February 3, 1970, the attorneys for the appellant and the attorney for the respondent agreed that the real party in interest, because of Anastasia Voltin's death, would be her son-in-law, who is the duly appointed, qualified, and acting executor of her estate. This appeal is considered as though the substitution of parties had been made.

The plaintiff, Anastasia Voltin, commenced an action for separation from bed and board, alleging extreme cruelty. In her complaint she alleged that her physical suffering and grievous mental suffering were caused by Francis Voltin in the following manner: that he stated that he did not love her and did not want to live with her; that he willfully and without cause refused to speak to her for long periods of time; that on occasion he committed actual physical violence upon her person; that he willfully neglected to provide her with sufficient money for clothes and other personal items; that he was unwilling to discuss his financial situation with her; that his violent actions made her fear for her life, which made it necessary for her to live separate and apart from him; that she was convinced that Francis Voltin no longer cared for her; that his attitude had completely destroyed the legitimate objects of matrimony; and

that a continuity of their marriage relation could serve only to make her unhappy and ill.

The defendant, Francis Voltin, answered the complaint by generally denying the plaintiff's allegations of cruelty, and prayed that the complaint of Anastasia Voltin be dismissed.

The trial court awarded judgment to Anastasia Voltin and granted her a legal separation. The trial judge, in addition, ordered that Francis Voltin pay Anastasia Voltin the sum of $25 per week for her permanent support and maintenance; that Anastasia Voltin was to receive her share of Social Security benefits each month; that Anastasia Voltin be awarded the homestead quarter of the section of land which Francis Voltin had owned, subject to a life estate of Francis Voltin for the use of the house and buildings located thereon; that Anastasia Voltin be entitled to all of the income and profits from this 160-acre tract of land; that the parties each retain their personal belongings, and that the household furnishings be divided between them.

This appeal involves two issues:

1. Whether Anastasia Voltin is entitled to a decree of separation; and

2. If the decree of separation is granted, did the trial court make an equitable distribution of the property?

Since Francis Voltin has demanded a trial de novo in his appeal and sets forth as error the granting of a legal separation to Anastasia Voltin, it is necessary for this court to review the findings of the trial court to determine whether its findings are supported by the evidence. The pertinent part of § 28–27–32, North Dakota Century Code, provides:

"The supreme court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case. * * *"

As stated in Rohde v. Rohde, 154 N.W. 2d 385, 386 (N.D.1967), in paragraph 1 of the syllabus:

"Where appellant in divorce action demands a trial de novo, this court is obliged to try anew questions of fact in the entire case."

The same rule is applicable on an appeal from a judgment granting a legal separation. See Bourrett v. Bourrett, 99 N.W.2d 325 (N.D.1959).

The first issue which confronts us is whether Anastasia Voltin is entitled to a legal separation.

Francis Voltin urges that Anastasia Voltin did not prove her case and that the corroborating evidence was insufficient. A review of the transcript of the trial indicates that Anastasia and Francis Voltin were married approximately 21 years prior to the commencement of this separate maintenance action; that Anastasia had been married previously and had five children as the issue of that marriage at the time of her first husband's death; and that this was Francis Voltin's first marriage. The parties experienced domestic discord during the later years of their marriage, which, in September of 1967, caused Anastasia to leave the family home and live apart from her husband. Anastasia then commenced this action against her husband for separation from bed and board. At the final hearing she testified to certain facts which supported her allegations of cruel and inhuman treatment. She related that her husband threw a glass of milk at her in response to her inquiry concerning his failure to pay medical bills which she had incurred, which were slightly in excess of $100. She also stated that he repeatedly told her that he did not love her and did not want her living in their home; and she stated that he told her that "I wished I would have took you way out of the country and left you there".

Mrs. Voltin further testified concerning the physical abuse that resulted following a floor-mopping incident when her mop, coming in contact with the metal floor edging, created sufficient noise to prevent her husband from hearing the news and market reports on the radio. Mr. Voltin, angered by her activity, seized her and shoved her into the living room with such force that she narrowly missed striking the television set. She stated that after this occurrence she left the family home and thereafter she and Francis no longer resided together as man and wife.

She testified further that Francis was continually disturbed by the money she spent for groceries, and he refused to permit her to write any further checks and he converted the family checking account to his own name.

She further stated that at times he would become angry and leave home and remain away overnight; that, when they were in Wilton he would stop at her daughter's house, leave her there, and drive off without her, against her wishes, and it then would be necessary for her daughter to return her to the Voltin home.

As a result of Mr. Voltin's course of conduct, she became very distressed and nervous, and, at times, hysterical. However, even after she had commenced this action, and while both parties were being counseled by a representative of the Burleigh County Family Court, Mrs. Voltin voluntarily returned to the family farm in an attempt to become reconciled with her husband. She stated that during her three-day stay at their home he refused to converse with her; he refused to eat the meals which she prepared for him, and then deducted $5 per day for each of the three days from the temporary support payments as ordered by the court which were due and owing to her.

The trial court also heard the corroborating testimony of Mrs. Voltin's son and daughter, Duane Baranyk and Mrs. Eva Anderson, prior to the time a legal separation was granted to Mrs. Voltin. Mr. Baranyk and Mrs. Anderson were both aware of the marital problems that existed between their mother and Francis Voltin, since they had been present during some of the occasions testified to by their mother. They were both certain that, as a result of the continual marital difficulties between the parties, their mother was subject to a number of anxieties and had become highly nervous, and they believed that a reconciliation of the parties was impossible because of their mother's fear for her physical well-being. At the time of the trial, Mrs. Voltin was about 72 years of age and during the past several years she had twice submitted to surgery for cancer and, in addition, had received numerous cobalt treatments for such illness.

We have before us the written record with its conflict of words, which we read without the presence of those who uttered them or the atmosphere of the trial. Such record does not always convey a true picture of mental reactions and physical conditions. The sensibilities of the litigants, their intelligence, viewpoints, sentiments and health, are factors in determining whether grievous mental suffering results from the conduct of one spouse toward the other. Bourrett v. Bourrett, *supra*; Raszler v. Raszler, 64 N.W.2d 358 (N.D.1954). This court has perused the testimony and we are of the opinion that the judgment of the trial court granting the separation should be affirmed. A more detailed recitation of the testimony would not serve any further good purpose. In arriving at this conclusion we are cognizant of the fact that the trial court had the advantage over the appellate court in determining who was telling the truth, and such circumstances have led the appellate court in trials de novo to state that whether the acts of one party in a separation action have inflicted grievous mental suffering upon the other is a question of fact to be determined from all the circumstances in the case and that the appellate court

making such determination de novo will give appreciable weight to the findings of the trial court. Bourrett v. Bourrett, *supra.* Francis Voltin charges that Anastasia Voltin has wholly failed to sustain the burden of proof in order to prove grounds for legal separation. The district court, however, found otherwise, and this court affirms that finding.

The next issue is whether the trial court made an equitable distribution of the property. Francis Voltin contends that because, at the time of his marriage to Anastasia Voltin, the property in question was brought into the marriage free and clear of all mortgages or liens, such property should be retained in one farming unit and not divided, contrary to the awarding of the Voltin homestead quarter section of land by the trial court to Anastasia Voltin. Francis Voltin also urges that an increase in the amount of alimony payments to Anastasia Voltin would be more equitable in lieu of the court's division of the real property.

The record discloses that at the time that Anastasia and Francis were married in 1946, Francis Voltin owned four quarters of land, free of all encumbrances, and, in addition, he owned other property, including machinery, grain in the bins, war bonds, Farmers Union elevator stock, interest in a house in Oregon, and cash, of the aggregate value of approximately $10,000. Anastasia Voltin, a widow and mother of five children by a previous marriage, owned a house in Wilton, North Dakota, valued at about $3,000, which her husband, Francis Voltin, subsequently purchased from her for the sum of $2,000.

Prior to the time that Anastasia Voltin instituted this action, all of the real and personal property was individually owned by Francis Voltin. In 1967 Francis Voltin owned four quarter sections of land, one of which was occupied as a homestead by Mr. and Mrs. Voltin. There was an $8,000 mortgage against the land. Francis Voltin also owned machinery which was subject to a $3,500 lien. In addition to the land and machinery, he owned some livestock, a few shares of elevator stock, some miscellaneous personal property, including a promissory note in the sum of $8,000 executed by Marlin Baranyk, a stepson, which note had been given in order to finance Marlin's purchase of farm land.

After the commencement of this action by Anastasia Voltin, and approximately one week prior to trial, Francis Voltin transferred by deed the title to all four quarters of his land to his sister in Oregon, and sold his livestock and machinery to Anastasia's son Marlin, for an $11,000 promissory note which was payable on demand and did not bear interest. In addition, an agreement was entered into by Francis Voltin with Anastasia's son Marlin, for the rental of the four quarters of Voltin land. The agreement provided that the income received would be split on a fifty-fifty crop share basis and that the landlord's share would be used to retire the mortgage against the land.

The trial court, at the conclusion of the trial, in making the following award to Anastasia Voltin, stated:

"In view of the fact that Mr. Voltin has transferred that land, his conveyance might be good as to the three quarters, but it's not good as to the homestead quarter and I'm awarding the homestead quarter to Mrs. Voltin. However, the Defendant, Francis Voltin, shall have a life estate on it as long as he may live on it but all income and profit to immediately to go to her. In addition he will pay her $25.00 a week. She will get half of the social security, she will get her property * * *. Mr. Voltin will pay $300.00 attorney's fees * * *."

This court, in Bourrett v. Bourrett, 99 N.W.2d 325, 330 (N.D.1959), said:

"The court granting a legal separation may make such suitable allowances which to the court may seem just, having regard

for the circumstances of the respective parties."

Section 14–06–03, N.D.C.C., provides:

*"Permanent maintenance—Division of property.*—Upon decreeing a separation, the court may make such order and decree for the suitable support and maintenance of the wife or husband, and children, if any, out of the separate or joint property of the husband and wife, or such division of the joint or separate property of the husband and wife, as may appear just and proper."

Section 14–06–04, N.D.C.C., provides:

*"Decree of separation—Effect.*—The decree of separation from bed and board shall confer upon both the husband and wife all the rights of property, business, and contracts as if unmarried, and shall release both husband and wife from all obligations of maintenance, except as may be required by the decree."

In light of these sections and of § 14–05–24, N.D.C.C., which provides in part: "When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper * * *", the rules set forth in divorce cases pertaining to the division of real and personal property are also applicable where the court in an action for separation has made a division of property for the support and maintenance of a party, pursuant to § 14–06–03, N.D.C.C.

This court held, in Azar v. Azar, 146 N.W.2d 148 (N.D.1966), that just and proper distribution of property of the parties to the divorce action depends upon the facts and circumstances in each particular case. And in Nicholson v. Nicholson, 126 N.W.2d 904 (N.D.1964), this court found that the ultimate object is an equitable distribution.

■ This court has also established that certain factors may be considered in arriving at an equitable distribution, which are as follows, as set forth in a recent opinion of this Court, in which we said:

"In determining a division of property between the parties in a divorce action, the court, in exercising its sound discretion, will consider the respective ages of the parties; their earning ability; the duration of the marriage; the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether accumulated or acquired before or after the marriage; and such other matters as may be material." Fischer v. Fischer, 139 N.W.2d 845, 847, ¶ 7 of the syllabus (N.D.1966).

■ In the instant case the evidence is undisputed that Francis Voltin, prior to the marriage of the parties, had acquired all of the farm real estate and had personal property, free and clear of any liens. The record further shows that when this action for separation was commenced, Francis Voltin's land was mortgaged in the amount of $8,000; that his machinery and equipment was subject to a lien against it of $3,500; and that he had a limited amount of miscellaneous personal property. The record, however, shows that there has been a substantial increase in the value of his land during the marriage of the parties and that some improvements had been made, especially a new home which was constructed, together with the purchase of modern farm machinery. The land is now worth approximately $50,000. The record further evidences that Anastasia was about 72 years of age, that Francis was about 67 years of age, that they had been married for 21 years, that neither party had any earning potential at the time of their separation except for the income received from the rental of the land, social security benefits that might be received, and such repayment as might be made by Marlin Baranyk on the debt he owed to Francis

Voltin. At the time of the trial Mrs. Voltin's health was poor, Mr. Voltin's health was good, and the necessities which would be required by each of them would be limited because of their retirement status.

We find, after considering these factors, that the granting of the Voltin homestead quarter to Mrs. Voltin by the trial court, subject to a life estate for the use of the buildings to Francis Voltin but with the income and profit being awarded to Anastasia for her support and maintenance, was not inequitable under the circumstances.

■■■ We are confronted with the question of whether the quarter section of land awarded to Mrs. Voltin is subject to the lien of the real estate mortgage in the sum of $8,000. The record reveals that the mortgage was executed and delivered to the Federal Land Bank some time prior to the commencement of the separate maintenance action. ﹒ is the general rule that an obligation under a contract cannot be impaired. Such impairment is prohibited by § 16 of the North Dakota Constitution and by Article I, § 10 of the United States Constitution. In State ex rel. Cleveringa v. Klein, 63 N.D. 514, 249 N.W. 118 (1933), this court held that the law of the land in existence at the time a contract is entered into forms a part of the contract the same as if it were expressly incorporated therein, and the obligations of the contract are determined by the law in force at the time it is made. We believe that this same principle governs in the trial court as well as in this court on appeal. Neither court has the power to reduce the security, that is, to remove from the mortgage a part of the land which the mortgage agreement originally covered, as in the instant case, because we are bound by the constitutional protection that a person's contractual rights may not be impaired. The section of land described in the mortgage in favor of the Federal Land Bank is security for the debt and

no part of the security can be eliminated by a judgment of the trial court or a decision of this court. Since the trial court did not make a finding concerning the status of the mortgage with reference to the Voltin homestead quarter, it is the obligation of this court in a trial de novo to determine whether this quarter is subject to the mortgage. We are compelled by the mandate of the State and Federal Constitutions and by the decision in State ex rel. Cleveringa v. Klein, *supra,* to find that the quarter section of land awarded to Mrs. Voltin is subject to the mortgage lien. Having determined that Mrs. Voltin's land is subject to the lien of the mortgage, we will next consider the protective measures, if any, which are available to her.

The Legislature of this State, in enacting Chapter 32–19 of the North Dakota Century Code, set forth the procedure for the foreclosure of a real estate mortgage by action. Section 32–19–06, N.D.C.C., provides in pertinent part:

"In any action for the foreclosure of a real estate mortgage * * * the court shall have the power to render judgment for the amount found to be due at the time of the rendition of said judgment, and the costs of the action, and to order and decree a sale of the premises in such mortgage * * * *or such part thereof* as may be sufficient to pay the amount adjudged to be due and the costs of the action. * * *" [Emphasis added.]

Section 32–19–08, N.D.C.C., provides as follows:

"All sales of mortgaged premises under a judgment of foreclosure must be made by the sheriff of the county in which the judgment is rendered, or his deputy, or by some person appointed by the court for that purpose, and must be made in the county where the premises, or some part of them, are situated, upon the notice and in the manner prescribed by law for the sale of real property upon execution."

The previous section refers to § 28–23–07, N.D.C.C., which provides in part:

"After sufficient property has been sold to satisfy the execution no more shall be sold. * * * The judgment debtor, if present at the sale, may direct the order in which property, real or personal, shall be sold, when such property consists of several known lots or parcels or of articles which can be sold to advantage separately, and the sheriff or other officer must follow such directions."

In the instant case the trial court has made a specific finding which awarded the homestead quarter to Mrs. Voltin, subject to a life estate in the buildings to Mr. Voltin. This is an equitable action and is here on trial de novo. We conclude, in view of the above statutes, that in the event there is a foreclosure of the mortgage covering the real estate in this case, the 480 acres of land not subject to this decree be first sold in parcels in order to satisfy the judgment to be rendered, in a foreclosure, in order to preserve not only Mrs. Voltin's interest in the quarter section of land, but the life estate of Mr. Voltin as well.

A request is made in Mrs. Voltin's brief for the allowance of costs and attorney's fees on appeal for Mrs. Voltin to be taxed to Mr. Voltin in this action. Mrs. Voltin did not make a motion for attorney's fees and costs on appeal before the district court, nor has she made a motion in this court for attorney's fees and costs on this appeal. Since the request for attorney's fees and costs on appeal was not presented to the district court nor to this court on motion, such request will not be considered by this court.

Francis Voltin's last contention relates to the denial by the court of a motion to modify the judgment. Since an appeal has not been perfected from the order denying this motion, this issue, not being properly before this court, will not be discussed.

For reasons stated in the opinion, the judgment of the trial court is affirmed.

TEIGEN, C. J., and ERICKSTAD, STRUTZ and KNUDSON, JJ., concur.